FURRER *v.* FERRIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 296.   Argued April 13, 1892. — Decided May 2, 1892.

The findings of a master in chancery, concurred in by the court, are to be taken as presumptively correct, and will be permitted to stand unless some obvious error has intervened in the application of the law or some important mistake has been made in the evidence, neither of which has taken place in this case.

*Crawford* v. *Neal*, 144 U. S. 585, affirmed and applied.

The court stated the case as follows:

In 1887, appellee was in possession of the property of the Toledo, Columbus and Southern Railway Company, as receiver, having been duly appointed such receiver by the Circuit Court of the United States for the Northern District of Ohio, in a foreclosure suit brought by the American Loan and Trust Company. On October 15, William Furrer, a young man of about twenty-one years of age, driving a load of wood

along the public highway, crossed the railroad track, and while making the crossing was thrown from the wagon, struck by the wheels and instantly killed. On December 15, appellant, the administrator of William Furrer, filed his intervening petition in said Circuit Court, seeking to recover ten thousand dollars damages, on the ground that the death of his intestate occurred through the negligence of the receiver in failing to keep the crossing in good repair. The matter was referred to a master, who took testimony and reported it to the court, together with his conclusion that there was no negligence in respect to such crossing, and, therefore, no liability on the part of the receiver. This report was confirmed by the Circuit Court, and the intervening petition dismissed. From that decision petitioner appealed to this court.

*Mr. Orville S. Brumback* for appellant.

Appellant's case was heard below before a special master, and is one of those too numerous instances where a party is substantially denied a jury trial by reason of the personal injuries complained of being inflicted while a railroad is being operated by a receiver.

The system of watered stocks and excessive bonded indebtedness employed in railroad manipulation, has resulted in the Federal courts being called upon to frequently operate railroads through receivers, for whose carelessness the remedy to be had is only through the favorable attitude of a special master.

That the Federal Constitution as well as those of the several States intend to guarantee to every citizen a fair and impartial trial by jury is unquestionable. And the fact that the equity jurisdiction of the Federal courts has substantially abridged that right in requiring cases like appellant's to be heard by a special master rather than a jury is none the less reprehensible because it is founded upon the implied authority of the judiciary.

The injustice that has resulted all over the country by reason of this practice undoubtedly led to the enactment of the late

statute, authorizing receivers to be sued and a trial before a jury had without the permission of court; but it does not go far enough to remedy all the evil, by *requiring* the receivers'. court to submit all questions arising upon cross-complaints (such as appellant's) to a jury for determination. *Jones* v. *East Tenn. Va. & Ga. Railroad,* 128 U. S. 443.

*Mr. A. W. Scott* for appellee.

Mr. Justice Brewer delivered the opinion of the court.

As this intervening petition was filed nearly a year after the passage of the act of March 3, 1887, (24 Stat. 554,) authorizing suits against receivers without leave of the court appointing them, it is evident that the petitioner preferred to not exercise his right to a common law action and a trial by a jury, but rather to come into a court of equity and have his rights there determined according to the rules and practice of such courts. In view of such election, we fail to appreciate his counsel's complaint of the law in not driving him to a forum which he so carefully avoided.

The gist of this controversy was the alleged negligence of the receiver in failing to maintain a reasonably safe crossing. This presented mainly a question of fact. Upon the testimony, both the master and the Circuit Court found that there was no negligence, and, while such determination is not conclusive, it is very persuasive in this court. In *Crawford* v. *Neal*, 144 U. S. 585, 596, it was said:

"The cause was referred to a master to take testimony therein, 'and to report to this court his findings of fact and his conclusions of law thereon.' This he did, and the court, after a review of the evidence, concurred in his finding and conclusions. Clearly, then, they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand. *Tilghman* v. *Proctor*, 125 U. S. 136; *Kimberly* v. *Arms*, 129 U. S. 512; *Evans* v. *State Bank*, 141 U. S. 107."

That rule compels an affirmance of the decree in this case. It appears that the railroad track was raised above the level of the highway; but the rise was slight, and the slope gradual. According to the testimony of the surveyor who measured the crossing, (and the other witnesses who simply gave estimates substantially corroborated him,) the rise on the one side was 1.4 feet in 30 feet, and on the other 1.3 in 15, and 1.9 in 30 feet — a rise but a trifle greater than that from the gutter to the centre of the street in many cities. That certainly carries with it no evidence of negligence. It appears also that the receiver had ballasted the track at the crossing, and it was claimed that some of the stones within the rails, and on the highway just outside of the rails, were unreasonably large; but the master found that "the stones were broken to a fair size," and that although one or two pieces of unreasonable size were produced on the hearing, yet "the weight of the testimony was that the stones in the roadway were of fair size and not dangerous to travel." Photographs of the crossing were presented to the master, to the Circuit Court, and also to us. Those photographs make it clear that the ascent on either side was gradual; that the total rise was slight, and but a few stones on either side of the track in the roadway. They put an end to any suspicion of negligence in the crossing, unless it were in the size of the stones; and the testimony leaves that matter in such condition that we are not justified in disturbing the finding of the master, approved as it was by the Circuit Court.

The decree is therefore                                        *Affirmed.*