NORTH AMERICAN EXPLORATION CO., Limited, et al. v. ADAMS et al.

(Circuit Court of Appeals, Eighth Circuit. October 15, 1900.)

No. 1,384.

1. WATER RIGHT—ABANDONMENT.
   The abandonment of the right to divert and use the waters of a stream is not different in its character from the renunciation of any other right which is asserted and maintained by its use.

2. SAME—EXPRESS—IMPLIED.
   Abandonment is either express or implied. It may be effected by a plain declaration of an intention to abandon. It may be inferred from acts or failures to act so inconsistent with an intention to retain and assert the right that the unprejudiced mind is convinced of the renunciation.

3. FINDING OF CHANCELLOR PREVAILS WHERE TESTIMONY IS EVENLY BALANCED.
   Where the chancellor has considered conflicting evidence, and made his finding and decree thereon, they must be taken to be presumptively correct, and will not be disturbed unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence.

4. CONVEYANCE OF MILL SITE CARRIES APPURTENANT WATER RIGHT.

A deed of a mill site, without specific mention of a right to divert water from a stream and to use it to operate a mill which has been used thereon, conveys the water right as an appurtenance to the mill site, in the absence of any reservation of it, of any conveyance of it to another, or any other evidence that the grantor did not intend to part with it.

5. WATER RIGHT APPURTENANT TO SITE ON WHICH IT IS USED.

A water right used upon a mill site to treat ore extracted from a mining claim, and brought to the mill site for treatment, is not appurtenant to the mining claim, but to the mill site.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

Charles J. Hughes, Jr., for appellants.
H. M. Hogg, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This appeal challenges a decree of the circuit court which perpetually enjoins the North American Exploration Company, Limited, Ernest Thalman, and Hamilton F. Kean, the appellants, from diverting the waters of Bear creek so as to prevent the same from flowing freely to the extent necessary, not exceeding 180 miner's inches, for the lawful uses and purposes of the appellees, Alva Adams, Frank Adams, W. H. Trout, and George Holmes, co-partners doing business as the Chief Mining & Milling Company, in carrying on upon their mill site their concentrating plant and mill for the reduction of ores and for the operation of their mines. The appellants allege that this decree is erroneous for three reasons: (1) Because, while they concede that the grantors of the appellees first diverted and appropriated the water of this creek to a beneficial use in 1886, and thereby obtained the right to so divert and use it, yet they assert that this right had been abandoned and lost by these grantors and their successors in interest when, in 1898, the appellants diverted and used this water, and thereby acquired the superior right to it; (2) because the conveyances of the Silver Chief mill site, to which the water was diverted and on which it was used in 1886, to the appellees, did not, in terms, convey the right to divert and use the water as an appurtenant to the mill site; and (3) because neither the appellees nor their grantors ever used 180 miner's inches of water, or more than 15 miner's inches. These objections to the decree will be considered in the order in which they have been stated.

The abandonment of the right to divert and use the waters of a stream is not different in its nature or character from the renunciation of any other right which is asserted and maintained by its use. It may be express or implied. It may be effected by a plain declaration of an intention to abandon it, and it may be inferred from acts or failures to act so inconsistent with an intention to retain it that the unprejudiced mind is convinced of the renunciation. In the case in hand there was no express declaration of a surrender of the right which the grantors of the appellees acquired

in 1886, and the issue of abandonment resolved itself into a question of fact, to be determined by the course of action which the parties pursued and the circumstances surrounding them as they were developed in the evidence. The facts material to this question which the evidence established were these: The waters of Bear creek, at the place where this controversy arose, run in a northerly direction. On its easterly side lie the Silver Chief mining claim and the Silver Chief mill site, which are owned by the appellees, with the exception of one acre of the mill site, upon which the mill was not situated, and to which no water was ever diverted. This acre is owned by two of the appellants. On the west side of the creek are the Nellie mining claim and the Nellie mill site, which are owned by the appellants. In 1886 and 1887 all these claims and mill sites were in the possession of the same claimants who built a mill on the Silver Chief mill site, and used it to reduce ore which they took from the Nellie mining claim, and brought to the mill on a tramway. For the purpose of operating this mill, they diverted the waters from Bear creek by means of a ditch and a pipe line, conducted it to the Silver Chief mill site, and there used it in their mill for the purpose of milling ore and producing power. It was conceded at the hearing and upon this argument that these acts gave to the owners of this property an established right in 1886 and 1887 to perpetually divert and use the waters of this creek to the extent and for the purposes for which they were used in the years 1886 and 1887. The operation of the mill proved to be unprofitable, and it was not continued. After its operation ceased the owners loaned the wheel and sold the pipe which was used to conduct the water to the mill, and in the year 1897 a snowslide swept the mill away. During these years from 1886 to 1897 the waters of the creek do not seem to have been claimed or used by others, and there was testimony that in the years 1896 and 1897 the owners of the Silver Chief mill site turned the waters of the creek into their ditch, although it does not appear that they used it for any beneficial purpose. In September, 1896, the appellees filed a notice of their claim to the right to divert and use the water of Bear Creek through the old ditch, under the statute. In May, 1898, the appellees commenced to construct a mill on the site of the old mill upon the Silver Chief mill site, to clear out their ditch, and to build a pipe line to conduct the water over its old course to their mill site, and in the year 1898 they had completed their mill, and commenced to use the water through this ditch and pipe line to operate it.

The appellants' claim to a superior right to this water rests upon these facts: On August 28, 1896, their grantor located a ditch and water right to divert 500 miner's inches of the waters of this creek at a point above the point of diversion of the appellees, and constructed a ditch 200 feet long, and led a portion of the water of the creek into this ditch, but did not apply it to any beneficial use. In April, 1898, the appellants commenced to dig a ditch from this point of diversion, to lay a pipe line to the Nellie mill site, and to construct a power house thereon to generate electricity to light

the Nellie mine. They constructed their power house, and first actually applied the waters of the creek to a beneficial use about three months after the appellees, in July, 1898, used it to operate their mill. The uncontradicted testimony of the witnesses was that the right to divert and use water upon a mill site was of very great value, while a mill site without the right to divert and use water upon it was practically valueless. The successive owners of the Silver Chief mill site testified that they never had any intention of abandoning the water right which they acquired in 1886.

There may be grave doubt whether or not the appellants could maintain a superior right to the diversion of the waters of this creek, even if it should be held that the appellees or their grantors had abandoned the right which they acquired in 1886. The ditch which the grantor of the appellants dug, and the diversion which he made of the waters of this creek in 1896, was on the east side of the stream, and he did not apply these waters to any useful purpose. Before the appellants commenced to construct the ditch and pipe line which they are now using, the appellees had filed a notice of their claim in September, 1896. Before the appellants had actually used any of the waters for any beneficial purpose, the appellees had constructed their new mill, had led the waters of the creek through the old ditch to their mill site, and had been using it for three months for the purpose of operating their mill. Upon this state of facts the equity of the appellants is not very persuasive. But before they can reach a consideration of these questions they must bear the burden of clearly establishing that the appellees or their grantors abandoned the right which they acquired in 1886 to divert the waters of this creek and use them upon their mill site. It may be conceded that the evidence in this case is so evenly balanced that a finding of abandonment would not be disturbed. The long period of 11 years during which the right to this water was not used, the loaning of the mill wheel, the sale of the pipe in the pipe line, the silence and inaction of the appellees and their grantors, might warrant such a conclusion. But this record is far from barren of competent and persuasive evidence which might well lead to an opposite finding. The facts that the Silver Chief mill site without the water right was valueless; that with it it was worth thousands of dollars; that during the time when this right was not exercised no one claimed to disturb or supersede it; that the old mill stood until swept away by the snow in 1897; that in the years 1896 and 1897 its owners turned the waters of the creek into the old ditch and permitted them to flow there; that they testify that they never intended to abandon their water right; and the very persuasive consideration that the voluntary renunciation of valuable rights of property is contrary to the ordinary course of human action,—furnish ample warrant for the conclusion that the right to divert and use this water acquired in 1886 never was abandoned, either by the appellees or by their predecessors in interest. This was the conclusion reached by the court below after a careful consideration of all this evidence. It is settled by the repeated decisions of the supreme court and of this court that where the chancellor has considered

conflicting evidence, and made his finding and decree thereon, they must be taken to be presumptively correct, and unless an obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the findings should not be disturbed. Mann v. Bank, 86 Fed. 51, 53, 29 C. C. A. 547, 549, 57 U. S. App. 634, 637; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110, 12 U. S. App. 591, 600; Plow Co. v. Carson, 72 Fed. 387, 388, 18 C. C. A. 606, 607, 36 U. S. App. 448, 456; Trust Co. v. McClure, 78 Fed. 209, 210, 24 C. C. A. 64, 65, 49 U. S. App. 43, 46. The evidence of abandonment is not so clear and convincing in this case as to warrant a reversal of the conclusion of the circuit court that it was not established.

The appellants derive their title to the Nellie mining claim, the Nellie mill site, and one of the five acres which constitute the Silver Chief mill site by various mesne conveyances from the same parties from whom the appellees derive their title to the Silver Chief mining claim, and all of the Silver Chief mill site except the acre owned by two of the appellants. The old mill built, in 1886, was on that portion of the Silver Chief mill site owned by the appellees. The new mill which has been constructed, and which is now operated by the appellees, is upon the site of the old one. The water right acquired in 1886 was used in the old mill in 1886 and 1887 to furnish power and to mill ore which had been extracted from the Nellie mining claim. This water right is not specifically mentioned or described in any of the conveyances, and counsel for the appellants argue that it was appurtenant to the Nellie mining claim, and passed to the appellants by the conveyance of that claim, and that, if it did not pass to them, it remained vested in the former owners. It is difficult to perceive how the right to divert, conduct to, and use water in a mill which is used to reduce ore is any more an appurtenance of the mine from which the ore is extracted than the right to divert and use it in a mill which is used to grind corn is appurtenant to the field where the corn grew. The position that this water right was appurtenant to or passed with the Nellie mining claim, because it was used to reduce ore extracted from it and treated in a mill on other property, finds no support in reason or authority. Turning to the other contention of counsel for appellant, it is conceded that a water right may be reserved from a conveyance of the mill or site on which it was exercised, and that it may be conveyed without or with the mill site. Whether or not it passes by a conveyance of the mill or mill site on which it was used depends upon the intention of the parties to the conveyance. In this case the old mill was standing when many of the conveyances of the mill site under which the appellees hold were made. The old ditch was there. The mill and site without the water right were worthless, while with it they were of considerable value. The grantors in the various conveyances of the mill and its site did not reserve the water right which had been exercised upon them, nor have they ever conveyed

it to others, claimed it themselves, or otherwise evidenced their intention that it should not pass by their deeds. The inference is irresistible that they intended to and did convey it as an appurtenance of the mill site.

A deed of a mill site and mill upon which a right to divert water from a stream and to use it to operate a mill has been exercised conveys the water right as an appurtenance to the mill, in the absence of any reservation of it, of any conveyance of it to another, and of any other evidence that the grantor did not intend to convey it.

The third objection to the decree is that it is too broad; that it permits the appellees to use 180 miner's inches of water per second, when neither they nor their grantors ever have used more than 15 miner's inches. There are two reasons why this objection is untenable. In the first place, there is evidence that the owners of the Silver Chief mill site used, in 1886, all the water that would discharge itself through an aperture 8 inches in diameter under a head of 165 feet to drive their mill wheel, and all that would discharge from an opening 2 inches in diameter under a pressure of 20 feet fall to mill their ore, and this was much more than 15 miner's inches per second. In the second place, if, as appellants claim, the appellees have not used, and cannot beneficially use, in the operation of their mill and mines, more than 15 miner's inches, then the decree allows them to use no more; for the injunction against the appellants only enjoins them from preventing the flow of such an amount of water to the appellants' mill, not exceeding 180 miner's inches, as is necessary to operate their concentrating plant, mill, and mines. The real issue tendered by the pleadings in this case was the priority of right to the use of the water of this creek, and not the quantity which the appellants were entitled to use, and the testimony upon the latter question is not of that clear and convincing character which calls for a modification of the decree which the chancellor has rendered, and it is affirmed.