STERNBERGER v. CONTINENTAL MINES, POWER & REDUCTION CO. et al.

(District Court, D. Colorado. May 19, 1919.)

No. 5277.

1. WATERS AND WATER COURSES ⊚⇒154(1)—WATER RIGHTS—CONVEYANCE.

A conveyance of placer claims, mill site, dam, power house, plant, and all buildings and improvements on the placer and mill site, with all poles, wires, transmission lines, and pipe lines running from the power house, with the appurtenances and privileges thereto incident, and also a ditch from a stream to the power plant, *held* to convey grantor's water rights in the stream from which the water to operate the power plant was conducted through the ditch.

2. ABATEMENT AND REVIVAL ⊚⇒71—INTEREST IN SUBJECT-MATTER—DIVESTITURE OF INTEREST.

Where an owner of water rights, after the commencement of suit to establish such rights and for an injunction preventing interference therewith, conveyed all his rights and thereafter died, his administrator has no standing in the further prosecution of the suit, and an order of revivor in his name was erroneous.

3. COURTS ⊚⇒278—FEDERAL COURTS—DIVERSE CITIZENSHIP—CHANGE OF PARTIES.

Where a federal court has obtained jurisdiction of a cause because of diversity of citizenship, such jurisdiction is not divested because plaintiff has conveyed all his rights in the subject-matter to a party of the same citizenship as defendant.

In Equity. Suit by Samuel Sternberger against the Continental Mines, Power & Reduction Company and another, to establish water rights, and for an injunction. Complainant having died, the suit was revived in the name of Leopold Sternberger as his administrator. On motion to dismiss, and to vacate the order of revivor. Order of revivor set aside, and motion to dismiss sustained on condition.

Tolles & Cobbey, of Denver, Colo., for plaintiff.
Morrison & De Soto, of Denver, Colo., for defendants.

LEWIS, District Judge. This suit was brought in the Circuit Court in January, 1909, by Samuel Sternberger, a resident and citizen of the State of Pennsylvania, against the defendants, both residents and citizens of Colorado. The bill sets up a controversy over water rights in the Fall River, a small mountain stream. The complainant was the owner of two placer claims and the "F" millsite on that stream. He also began the construction of a ditch and pipe line from the stream, known as the Pennsylvania Mining Company of Colorado's Ditch Number Two, to the millsite, in December, 1905. He made claim to all of the water flowing in the stream for irrigation, placer mining,

and stamp and concentrating mills, and constructed a dam across the stream so that the water would be available for all of the intended purposes. He intended to construct an electrical power plant on the millsite. At the time the bill was exhibited he had expended a large amount of money for the purposes alleged, and afterward completed the construction of the power plant, bringing the water to it through the ditch and a large pipe which he put in. He alleges a compliance with the State statute as to the acquisition of water rights. He had used, and intended to continue to use, the water in working his placer claims along the river, as well as in the operation of the power plant. It is then alleged that in October, 1907, the defendants claimed and attempted to appropriate the waters of the stream for power purposes, that they had diverted the waters therefrom above the complainant's dam and headgate, had constructed an electrical power plant to which the waters were carried through a pipe line, and after their utilization for power purposes had permitted the waters to flow back to the stream below the complainant's dam and headgate, that a duty rested on the defendants, if they diverted the waters, to return them to the stream above the complainant's headgate, so that their use might be fully available to him, and that that could be done at a slight cost to the defendants. That the defendants attempted to acquire a right to the use of the waters of Fall River with full knowledge at the time that complainant had a prior right thereto, and that if the defendants were permitted to carry out their intended purposes and were not required to return the waters to the stream above the complainant's headgate the complainant's property right in and to the use of the waters, and all thereof, would be entirely destroyed. It is alleged that complainant's appropriation calls for the entire normal flow of the stream, and that the defendant Seeman, as the manager of the defendant corporation, had repeatedly declared that it was the intention and purpose of the defendant corporation to claim, take and use all of the waters of Fall River. In other allegations it is claimed that the waters are necessary and indispensable to the complainant in the operation of his mill and the utilization of his placer claims. A writ of injunction is prayed.

A plea entered by the defendants disclosed that a proceeding was then pending in the State District Court in which the disputed water right was in issue, and would be adjudicated. This suit thereafter remained in suspense until that adjudication could be had, except the issuance of the temporary writ of injunction on April 19, 1909, enjoining the defendants from discharging the waters of Fall River at their power plant in such manner that they would not return to the bed of the stream above the complainant's headgate and dam. The order for that writ further provided that—

"defendant shall be required to return the said waters to the said stream of Fall River above the said dam and headgate of complainant by some proper and convenient method of return to be agreed upon, if such agreement is found possible, between the parties hereto, the complainant to provide and pay one-half of the actual expense of the construction of such necessary and proper method of return of said waters, and the defendants to pay the other one-half thereof, a true and correct account and statement of such expense to be certified and returned to this court and filed herein upon completion of said

work and the payment therefor, the amount so paid in advance by the parties hereto, respectively, to be repaid by the unsuccessful party upon the final determination of this cause, and subject to the further and final order of this court in the premises.

"It is further ordered that in case of the inability of the parties hereto to agree upon a proper method of return of the said waters that application may be made to this court for a further and proper order in this regard."

The parties were unable to agree on the method of returning the waters to the stream, and so reported to the court on May 19, 1910, and on that day the following order was made in the cause:

"This cause comes on now to be heard upon the motion of the complainant for an order modifying the injunction heretofore issued herein, and is argued by counsel, John R. Smith, Esq., appearing as solicitor for the complainant, and Emilio D. De Soto, Esq., appearing as solicitor for the respondents. And thereupon, on consideration thereof, and it appearing to the court that the parties hereto are unable to agree upon the method by which the waters in controversy are to be returned to the stream from which they have been taken by the respondents, it is ordered by the court that the respondents return to the stream the waters taken therefrom by them, in such manner as they shall select, at a point above the dam built by complainant, within fifteen days from this day."

Thereafter, and on February 5, 1915, the complainant filed his supplemental complaint, setting up that the State court, on October 9, 1914, had adjudged that complainant was the owner of the water right which he claimed in his original complaint, and had denied to the defendant corporation the right to use said water. The complainant attached to his supplemental bill a statement of account showing that he had expended $1,048.85 in the construction of a flume during the months of June, July, August and September, 1910, for the return to the stream above complainant's dam of the water which the defendant corporation had taken out of the stream and carried to its power plant.

The answer to the supplemental complaint, filed December 9, 1916, sets up that the defendant corporation, within fifteen days after the order of May 19, 1910, constructed a proper ditch for the return to Fall River, above the dam and headgate of complainant, of the waters taken therefrom by it, and it, through such ditch, returned the waters to Fall River, and that it has at all times since been ready and willing to return the waters to the stream through said ditch but that the complainant, without the consent of the defendant corporation constructed a conduit flume by and through which the waters might be returned to the stream at another and different point selected by the complainant.

On October 6, 1917, the defendant corporation moved that the suit be dismissed for the reason that the complainant had parted with his entire interest in the property involved in this suit, to the Fall River Power Company, a corporation organized under the laws of the State of Colorado, and a citizen and resident of the same state as that of the defendants.

On January 14, 1919, Leopold Sternberger filed his petition in the cause reciting that since the commencement of the suit Samuel Sternberger, the complainant, had died, and that on the 17th day of December, 1918, Leopold Sternberger was appointed administrator of the estate of Samuel Sternberger by the County Court of Clear Creek Coun-

ty, Colorado, and prayed that the cause be revived in the name of the administrator as complainant. An order was made as prayed.

Defendants' motion to dismiss was then set down for hearing, and the defendants, to sustain the allegation of fact in their motion, offered in evidence two deeds from Samuel Sternberger to the Fall River Power Company, one of date November 17, 1910, and the other August 18, 1911. By these deeds Samuel Sternberger conveyed to the Fall River Power Company the two placer claims and the millsite named in the complaint, also the dam, power house, plant and all buildings and improvements now upon said placer and millsite, and all poles, wires and transmission lines, and pipe lines now running to and from the power house and plant situated on the "F" millsite, together with the appurtenances and privileges thereto incident, also the ditch, flume or pipe line known as the Pennsylvania Mining. Company of Colorado's Ditch, Flume or Pipe Line Number Two, the stream from which water is taken for said ditch, flume or pipe line being the Fall River in Clear Creek County, and the terminus of the ditch, flume or pipe line being on the "F" millsite, and also all rights thereunder of every kind and nature. These conveyances are not denied. The defendants thereupon pressed both their motion to dismiss and also moved to vacate the order reviving the cause in the name of the administrator, Leopold Sternberger. The two motions will be separately considered.

[1] 1. One of the grounds on which counsel for the administrator claims that the motion to vacate the order of revivor should not be granted is that it does not appear from the deeds that Samuel Sternberger conveyed his water rights to be used in operating the mill, in working the placer claims, and that those rights are an asset of the estate and are to be protected by the administrator. I have no doubt from the allegations of the complaint, and also from the deeds themselves, that Samuel Sternberger conveyed to The Fall River Power Company his water rights here in controversy, along with his placer claims, the millsite and the power plant on the latter. Insurance Co. v. Childs, 25 Colo. 360, 54 Pac. 1020; Cooper v. Shannon, 36 Colo. 93, 85 Pac. 175, 118 Am. St. Rep. 95; Exploration Co. v. Adams, 104 Fed. 404, 45 C. C. A. 185.

[2] The claim is also made by the administrator that he is entitled to recover in this cause a judgment against the defendants for one-half of the $1,048.85 expended by Samuel Sternberger in constructing the flume for the return of the waters, and as basis for that contention he relies upon that part of the order of the court directing the issuance of the temporary writ of injunction heretofore set out, and to avoid the effect of the subsequent order of May 19, 1910, modifying the prior order, he presents an affidavit of counsel for the original complainant in which it is said that counsel understood the order of May 19th to be to the effect that the complainant should return the waters of Fall River to the stream above the complainant's dam. Of course I have no independent recollection about that order. It was not in writing but orally announced, and taken down by the Clerk and entered by him; but I feel confident that counsel for the original complainant is mistaken. That order directs the respondents to make return of the

waters, and refers to those waters as the waters taken from the stream by the respondents. Furthermore, there was no occasion or need for an order that the complainant return the waters. The action sought was against the respondents. They could not agree with the complainant as to the manner in which the waters should be returned and the kind of structure needed for that purpose. The complainant was urging upon the court the necessity of requiring the respondents to return the waters to the stream so that the complainant could use those waters, and the order was entered for the benefit of the complainant, and a short time given to the respondents within which to comply, and they did comply. They returned the waters to the stream above the complainant's dam. It turned out that the way in which this was done was not satisfactory to the complainant and he afterward, on his own motion and at his own expense, constructed a flume for that purpose. There is no basis in the orders of the court on which a liability of the defendants for any part of the cost of constructing that flume can be based. The result of this is that there is no interest of the estate of Samuel Sternberger now involved in any way in the subject-matter of this controversy, and his administrator can have no standing in the further prosecution of this cause. The order of revivor is therefore set aside and annulled.

[3] 2. The motion to dismiss presents a very different inquiry. When Samuel Sternberger conveyed all of his interest in the subject in controversy to the Fall River Power Company there was a defect of parties. When that fact was called to the attention of the court the cause could not proceed. He then had no interest in the suit to be litigated with the defendants. This is not disputed. Counsel for the administrator, on argument of the motion, said that if the court should be of the opinion that the order of revivor should be vacated he desired that opportunity be given to substitute the Fall River Power Company, grantee of Samuel Sternberger, as complainant in the cause, and both sides filed briefs on the proposition, the defendants contending that inasmuch as the respective parties would all then be residents and citizens of Colorado the jurisdiction of this court over the controversy, dependent originally upon diverse citizenship, would be ousted. Counsel for defendants concedes that where a condition similar to the one in hand is brought about by operation of law, and not by the voluntary act of either of the parties, jurisdiction continues after substitution (Mullen v. Torrance, 9 Wheat. 537, 6 L. Ed. 154; Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845; Clarke v. Mathewson, 12 Pet. 164, 9 L. Ed. 1041; Morgan's Heirs v. Morgan, 2 Wheat. 290, 4 L. Ed. 242; Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329), but insists that where such a change is brought about by the voluntary act of one of the parties jurisdiction is then lost, except in cases where the further relief sought is only ancillary, and he cites in support the opinion of Judge McCrary, sitting in this District, in Adams Express Co. v. D. & R. G. Ry. Co. (C. C.) 16 Fed. 712, 718; Pittsburgh Co. v. Fiske, 178 Fed. 66, 101 C. C. A. 560. The first case appears to support the contention, and the second expresses the same view, although in the latter the particular question was not up for determination. Circuit

Judge Lanning only stated what his views would be if the question had been raised. District Judge Bunn took the contrary view in Glover v. Sheppard (C. C.) 21 Fed. 481, and District Judge Foster likewise in Jarboe v. Templer (C. C.) 38 Fed. 213, 216, and the Court of Appeals for the Fifth Circuit reached the same conclusion in Cross v. Evans, 86 Fed. 1, 29 C. C. A. 523. But I think the Supreme Court, in Hardenbergh v. Ray, 151 U. S. 112, 14 Sup. Ct. 305, 38 L. Ed. 93, settles the conflict between the lower courts against the contention of the defendants. The jurisdiction of the Circuit Court in that case depended originally upon diversity of citizenship. It was an action of ejectment against tenants. A substitution of their landlords as defendants in their stead was permitted, and the plaintiffs and defendants were then residents and citizens of the same State. The court held that jurisdiction having attached on account of the diversity of citizenship when the action was brought, "no subsequent change of the parties could affect that jurisdiction," and that it was the duty of the trial court, after the substitution, to proceed with the cause.

Leave until June 20th next is therefore given to the Fall River Power Company to come in and be substituted as complainant. On its failure to do so the motion to dismiss will be sustained.