SCHMERTZ v. UNITED STATES LIFE INS. CO. IN CITY OF NEW YORK.

(Circuit Court of Appeals, Third Circuit. September 24, 1902.)

No. 36.

1. INSURANCE—POLICY—NONCONTESTABLE CLAUSE—CONSTRUCTION.

A policy provided that it should take effect on payment of the first premium, and that failure to make payment of any subsequent premiums, which were payable annually, when due, should render the contract null and void, and that, if the policy should become void, all payments made thereunder should be forfeited. *Held*, that in view of such provision, declaring the forfeiture for nonpayment of "any subsequent" premium, a provision that after two years from the date of the policy, if the premiums are duly paid as stipulated, the liability of the company should not be disputed, could not be construed to preclude the company from disputing liability or from forfeiting the policy for nonpayment of the third annual premium.

2. SAME—PREMIUMS—TIME OF PAYMENT—EXTENSION—FORFEITURE—ACTIONS—EVIDENCE—INSTRUCTIONS.

Where in an action on a policy there was no evidence that the company extended the time for payment of premiums in a certain year beyond the day on which they were payable, according to the terms of the policy, including the 30 days' grace allowed, an instruction that any agreement, declaration, or course of action on the part of the company leading insured to believe that by conforming thereto a forfeiture of his policy would not be incurred would estop the company from insisting on a forfeiture of the policy, etc., was properly refused.

3. SAME.

The fact that an insurance company in a certain year or years granted to the insured an indulgence in the payment of his premiums, and accepted payment after the time within which they could be paid had expired, did not bind the company to grant such an indulgence in a subsequent year, or estop it from enforcing a forfeiture for nonpayment of premiums on the date required according to its notices.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

¶ 3. See Insurance, vol. 28, Cent. Dig. § 1057.

D. T. Watson, for plaintiff in error.

Willis F. McCook, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. This case is before us on a writ of error to the circuit court of the United States for the western district of Pennsylvania. Amelia E. Schmertz, the plaintiff in error, brought an action of assumpsit in the court of common pleas No. 1 of Allegheny County, Pennsylvania, to recover against The United States Life Insurance Company in the City of New York, a corporation of New York, the defendant in error, on two policies of life insurance, each for the sum of $10,000, issued to her husband Edmund C. Schmertz in the fall of 1896. After the filing of the statement and affidavit of claim, and before further pleadings were had, the action was, on the application of the defendant, removed to the circuit court for the western district of Pennsylvania, and, thereafter coming to trial, judgment was by direction of the court entered for the defendant November 16, 1901. To reverse this judgment the present writ was taken. Each of the policies is in the same words, letters and figures as the other, save that one of them is numbered 87,280 and the other 87,281, and, aside from the application therefor, is in the following form:

"No. 87,280.                                                   Amount, $10,000.

The
United States
Life Insurance Company,
In the City of New York.

Copy of the application for this policy attached hereto.

Age 41.                                                         Premium, $183.50.

In Consideration of the statements and agreements in the Application for this Policy on the life of Edmund C. Schmertz (hereinafter called the Insured) which are made part of this contract; and in

Further Consideration of the payment of the annual premium of One hundred and eighty-three Dollars and fifty cents on or before the seventeenth day of September in every year during the continuance of this contract:

Does Hereby Promise to Pay, at its office in New York City, to Amelia E. Schmertz (hereinafter called the Assured) if living; if not living then to the Executors, Administrators or Assigns of the Insured, the sum of Ten Thousand Dollars (less the balance of the year's premium, if any, and any other indebtedness to the Company), within 60 days after receipt at its said office of satisfactory proofs, upon the Company's blanks, of the death of the Insured, within the period of Ten years ending on the 17th day of September, nineteen hundred and six at noon; upon the conditions and agreements on the back hereof, which are made part of this contract.

In Witness Whereof, The said company has, by its president and secretary, signed this policy at its office in New York City, the seventeenth day of September, eighteen hundred and ninety-six.

A. Wheelwright,                                    Geo. H. Burford,
    Assistant Secretary.                                  President.
(Wife's Continuable Term.)

Edition 294—A.

Checked by                                          Examined by
    H.                                                  E. N. H.

Conditions and Agreements Referred to in the Within Policy.

I. All premiums are payable in New York City at the company's office. This policy shall take effect only upon actual payment of the first premium hereon, and delivery of this policy to the assured (during the lifetime and sound health of the insured), in exchange for the company's receipt for said payment signed by the president, secretary, assistant secretary or actuary. Failure to make payment of any subsequent premium either to the company or to a duly authorized agent in exchange for receipt signed as above, or nonpayment of principal or interest on any note given in connection with this policy, when due, will render this contract null and void. Whenever this policy shall become null and void from any cause, all payments made hereunder shall become forfeited to the company, except that:

II. After being in force three full years, an extended insurance shall be allowed, in accordance with the requirements of Chapter 690 of the Laws of 1892, of New York.

III. In case of understatement of age, the amount payable shall be the insurance that the actual premium paid would have purchased at the true age of the insured. Any other breach of warranty or untrue or incomplete statement made in the application for this policy will render this contract null and void, provided that discovery of the same must be made and communicated to the insured or assured within two years from the date hereof.

IV. Within two years from the date hereof, death by suicide; impairment of health by narcotics or stimulants; travel or residence within the Torrid Zone; engagements in blasting, mining or sub-marine labor; manufacturing, handling or transporting inflammable or explosive substances; service upon any vessel or boat; or engagement in military or naval service in time of war; shall render this contract null and void.

V. This company shall not take notice of any assignment of this policy, until a duplicate original of such assignment be delivered to it at its office in New York City.

VI. Options for renewal, or change of policy, without medical examination.

(a) Upon written application and surrender of this policy, by the legal holder hereof, to the company, at its office in New York City, before the expiration of the term, this policy being in full force and effect, this insurance may be renewed upon the same plan, or upon any other plan then issued by the company, upon payment of the premium therefor corresponding to the then age of the insured.

(b) At any time while this policy is in force, the legal holder hereof may change it to a policy of the same amount, upon any plan then issued by the company, by the payment of the premium rate called for thereby at the then age of the Insured; or

(c) To a policy of the same amount and date, and at the premium rate required therefor at the original age hereunder, by payment of a sum equal to the difference in premiums, with interest at the rate of 4 per cent per annum compounded.

VII. The said company agrees, in case the life insured survive to the end of the specified period, if this policy be then in full force, to pay to the said Edmund C. Schmertz the dividend apportioned to this policy from its profits by said company. If desired, said dividend may be used in reduction of future premiums under a renewal of this policy.

VIII. After two years from the date hereof, if the premiums on this policy are duly paid as herein stipulated, the liability of the company under this policy shall not be disputed.

C. P. Fraleigh,                                  George H. Burford,
          Secretary.                                        President."

Policy No. 87,280 was delivered to Edmund C. Schmertz, the insured, October 22, 1896, and policy No. 87,281 was delivered to him November 30, 1896. Schmertz paid the annual premium on each policy for two years, and, while the payments were not, in point of time, made in those years as required by the express provisions of the policy, it is nevertheless conceded that the delay on his part in making

them did not under the circumstances disclosed in the case render void or in any manner affect the validity of the policies or either of them. Schmertz died October 20, 1898; neither he nor any one for him having paid the third annual premium on either of the policies. Nor was such third annual premium paid by anyone after the death of Schmertz.

The first question raised by the assignments of error, and that on which much stress was laid by counsel on both sides, is whether, the annual premiums for the first two years having been paid to and accepted by the insurance company, the omission to pay the annual premium on the policies for the third year avoided them. Under each policy Schmertz was insured "upon the conditions and agreements on the back hereof, which are made part of this contract." One of those conditions is as follows:

"VIII. After two years from the date hereof, if the premiums on this policy are duly paid as herein stipulated, the liability of the company under this policy shall not be disputed."

It is claimed on the part of the plaintiff in error that the words "if the premiums on this policy are duly paid as herein stipulated" have reference solely to the period of two years next following the date of the policy, and that the effect of the condition is that, if annual premiums were duly paid by him for that period, the policy could not be avoided by his failure to pay the third or any subsequent annual premium as stipulated in the policy. The policy on its face shows that a vital consideration for the contract of insurance was "the payment of the annual premium of One Hundred and eighty-three Dollars and fifty cents on or before the seventeenth day of September in every year during the continuance of this contract." The consideration of the contract was not in whole or in part any promise or undertaking on the part of the insured to pay such premium every year, but his actual payment thereof every year until his death or the termination of the period of ten years, whichever event should first occur. The first condition in the policy is of controlling importance. It and the second condition are as follows:

"I. All premiums are payable in New York City at the Company's office. This policy shall take effect only upon actual payment of the first premium hereon, and delivery of this policy to the assured (during the lifetime and sound health of the insured), in exchange for the company's receipt for said payment signed by the president, secretary, assistant secretary or actuary. Failure to make payment of any subsequent premium either to the company or to a duly authorized agent in exchange for receipt signed as above, or non-payment of principal or interest on any note given in connection with this policy, when due, will render this contract null and void. Whenever this policy shall become null and void from any cause, all payments made hereunder shall become forfeited to the company, except that:

II. After being in force three full years, an extended insurance shall be allowed, in accordance with the requirements of Chapter 690 of the Laws of 1892 of New York."

The exception contained in the second condition has no applicability to this case, which, aside from any question of waiver, falls strictly within the express provisions of the first condition. That condition is in itself plain and unambiguous. There is no room on its face for more than one construction as to its effect. It renders the contract

"null and void" for "failure to make payment of any subsequent premium" as therein required. The eighth condition, if construed as contended for on the part of the plaintiff.in error, would be inconsistent with and repugnant to the first condition. It would virtually strike out of that condition the words "any subsequent premium" and substitute therefor "the second premium"; it being provided that the "policy shall take effect only upon actual payment of the first premium," &c. The eighth condition, read by itself, is capable of more than one construction. Standing alone, it might mean that, if the premiums are duly paid for a period of two years next following the date of the policy, liability thereunder of the insurance company shall not thereafter be disputed on account of the non-payment of a subsequent annual premium as stipulated or on any other ground; or, on the other hand, that, if the premiums are duly paid for such period of two years, liability of the insurance company under the policy shall not thereafter be disputed, save for nonpayment of a subsequent annual premium, as stipulated, or, in other words, the liability of the company under the policy shall not after the expiration of such period of two years be disputed so long as the annual premiums continue to be paid as stipulated. Where a particular provision in a contract, when taken alone, is susceptible of two or more meanings, it should be examined in the light of the remaining provisions in order that its real significance and effect may be determined. The ambiguous provision should, if possible and reasonable, be so construed as not only to give it effect, but also to avoid repugnancy to, and harmonize it with, the other provisions, to the end that the contract may be operative in all its parts. The application for each policy contains, among other things, the following:

"It is hereby declared and agreed: 1st. That all the statements and answers in this application are hereby warranted to be true, full and complete, and that this application and declaration shall, with the policy herein applied for, alone constitute the contract between me and The United States Life Insurance Company in the City of New York," &c.

The third condition of the policy is as follows:

"III. In case of understatement of age, the amount payable shall be the insurance that the actual premium paid would have purchased at the true age of the insured. Any other breach of warranty or untrue or incomplete statement made in the application for this policy will render this contract null and void, provided that discovery of the same must be made and communicated to the insured or assured within two years from the date hereof."

The fourth condition renders the policy null and void in case of death by suicide within two years from the date thereof, &c. Reading the eighth condition in connection with the portion of the application above quoted, and the first, third and fourth conditions, it clearly was not the purpose of the eighth condition to preclude the insurance company from disputing its liability on the ground of the non-payment of premiums as stipulated either after or before the expiration of two years from the date of the policy, but merely that the insurance company, if premiums were duly paid as stipulated, should not be permitted, after the expiration of the above mentioned period of two years, to dispute its liability, except as otherwise provided, on the ground of "breach of warranty or untrue or incomplete statement" in

the application, or breach of the fourth condition, or both. This conclusion accords with and is required by the express provisions of the policy as a whole and by the nature of such a contract. The prompt payment of premiums is of its essence, and failure to make such payment, if not expressly or impliedly waived by the insurer, is a breach of a condition subsequent, resulting, unless otherwise provided, in the forfeiture of premiums paid and in the termination of the contract. Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; Klein v. Insurance Co., 104 U. S. 88, 26 L. Ed. 662; Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765. We are not unmindful of the rule requiring policies of insurance to be liberally construed in favor of the assured and the adoption of that one of two admissible constructions which is less favorable to the insurer. But here there is no room we think for the construction of the eighth condition urged on the part of the plaintiff in error, and the first assignment, therefore, cannot be sustained.

The second assignment alleges error on the part of the court below in refusing to charge the jury as follows:

"That forfeitures are not favored in the law, and that any agreement, declaration or course of action on the part of an insurance company which leads the party insured honestly to believe that by conforming thereto a forfeiture of his policy or policies would not be incurred, followed by due conformity on his part, will operate to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract; the company is, under such circumstances, estopped from enforcing the forfeiture. And if the jury find from the evidence in this case of the whole course of business between the defendant company and the insured from the commencement to the close, that the insured, as a prudent man, had reasonable ground to believe, and did believe, that the defendant company would not require him to pay the premiums maturing on October 17, 1898, promptly on or before that day, but that it would be willing to take his money or notes in payment of said premiums within a reasonable time after said day, without regard to the condition of his health, then the failure of the insured to pay said premiums prior to his death October 20, 1898, was not a valid ground of forfeiture of said policies, and the plaintiff is entitled to recover."

If there was no evidence in the case tending to support such an instruction, there was no error in refusing to give it to the jury. Was there any such evidence? It appears, without contradiction, that the insurance company, through its manager, early in September, 1898, mailed to the insured notice in printed form informing him of the day, September 17, 1898, on which the third annual premium on each of the two policies would fall due, and its amount. Each notice contained, among other things, the following:

"Payment may be made to the undersigned on that day, or within the one month's grace allowed, (provided the policy be then in force), in exchange for the company's official receipt, which is held at this office.

    Respectfully,                     W. M. Wood,
                                        Manager."

Afterwards the insurance company, through its manager, sent, October 6, 1898, the following written communication to the insured:

                              "Pittsburg, Pa., October 6th, '98.

Mr. E. C. Schmertz, City:

Dear Sir:—The premium on your two policies, amounting to $367, due September 17th, has not yet been paid. In order to save this from lapse the

money should be in our office on or before October 17th. As this policy has only been paid two years, if this premium is not paid you will forfeit all rights under it. One more payment would make it nonforfeitable. Please give the matter attention.

Yours very truly,                    W. M. Wood, Manager."

The record shows that the above letter was received by the insured, and there is no evidence that it was not received in due course of mail. In the absence of such evidence it may be presumed that it was so received not later than the day next following its date. It also appears from the uncontradicted evidence that Joseph S. French, an agent of the insurance company, under Wood, saw the insured in Pittsburg October 8, 1898, and told him that his premium was due, that he "was on grace at the time" and that he had better attend to the matter at once. French subsequently and prior to October 17, 1898, the limit of the extension of time for the payment of the third annual premium on the policies, urged the insured promptly to make payment thereof. The insured, however, failed to do so and died October 20, 1898, as before stated. There is absolutely no evidence that the insurance company extended the time for the payment of the premiums in 1898 beyond October 17. The company, on the contrary, fully notified the insured and insisted that the premiums must be paid by that time to avoid a forfeiture.

It is well settled that forfeiture under a clause in a policy of life insurance, providing for it in case of non-payment of premiums at maturity and declaring want of authority in agents of the insurer to receive payment thereafter or to waive forfeitures, may be waived by the insurer either expressly or by implication; and is impliedly waived where the conduct of the insurer in dealing with the insured and others similarly situated has been such as reasonably to induce a belief on the part of the insured that, if the premium be not paid by the stipulated date, a forfeiture will not be enforced, if payment be made within a reasonable period thereafter. Insurance Co. v. Doster, 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65. But it is equally true that the mere granting of indulgence to the assured beyond the time stipulated in the policy for payment of the premium in one year does not bind the insurer to grant a similar indulgence in a subsequent year. In Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765, Mr. Justice Bradley, in delivering the opinion of the court, spoke of granting indulgence or days of grace for payment of premiums as follows:

"This was a mere matter of voluntary indulgence on the part of the company, or, as the plaintiff herself calls it, an act of 'leniency.' It cannot be justly construed as a permanent waiver of the clause of forfeiture, or as implying any agreement to waive it, or to continue the same indulgence for the time to come. As long as the assured continued in good health, it is not surprising, and should not be drawn to the company's prejudice, that they were willing to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured, at the time; and in each instance in which it happened it had respect only to that particular instance, without involving any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular

lapse without endangering its right to enforce it on occasion of a subsequent lapse. Such a consequence would be injurious to them and injurious to the public. * * * It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted. But it must be a just and reasonable ground, one on which the assured has a right to rely."

In the case before us the granting by the insurance company prior to 1898 of indulgence or days of grace for payment of the premiums on the policies in suit, as shown by the evidence, could not possibly, as against the notice and insistence of the company that the third annual premium must be paid by October 17, 1898, have given the insured, assured, or any other person "just and reasonable ground to infer that a forfeiture would not be exacted" in case of non-payment by the day last named. There was no evidence to go to the jury to establish a waiver beyond that day. In view of the conclusions reached it is unnecessary to consider the other assignments of error.

The judgment of the court below is affirmed, with costs to the defendant in error.