## MANHATTAN LIFE INS. CO. OF NEW YORK v. WRIGHT.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1903.)

### No. 1,875.

1. EQUITY—JURISDICTION—BILL TO REDEEM.
   A court of equity has jurisdiction of a suit to redeem property from a mortgage after default in the payment of the mortgage debt, and the mortgagor has no adequate remedy at law.

2. INSURANCE—FORFEITURE—FAILURE TO PAY PREMIUM—TIME ESSENCE OF AGREEMENT.
   The time of payment of a premium for insurance is, in the nature of the agreement, of the essence of the contract. A stipulation in the policy, in a note for the premium, or in any other instrument which evidences the contract of insurance or a part of it, that the insurance shall be void if the premium is not paid on the agreed day, is conscionable, valid, and enforceable.

3. LOAN—FORFEITURE FOR DELAY—CONTRACT FOR A PENALTY.
   Time is not ordinarily of the essence of a contract to repay money borrowed. An agreement to forfeit or to lose money or property much in excess of interest during the delay on account of a failure to repay a loan on the stipulated day is a contract for a penalty for a failure to pay money, and is void, because compensation is the basic rule for the measure of damages, and interest during the delay gives full compensation.

4. EQUITY—DECREE PRESUMPTIVELY CORRECT.
   The finding and decree of a court of equity are presumptively right, and they should not be disturbed or modified by an appellate court unless an obvious error has intervened in the application of the law or some grave mistake has been made in the consideration of the facts.

5. ABANDONMENT—TEST IS INTENT TO ABANDON.
   The test of abandonment of one's rights is the existence or nonexistence of the intent to abandon them. The presumption is that the owner

¶ 2. See Insurance, vol. 28, Cent. Dig. § 891.

intends to preserve them. Acts indicating abandonment are not necessarily sufficient to establish it, but are generally only material as they tend to prove the intent to abandon.

**6. CONTRACTS—CONSTRUCTION—PRACTICAL INTERPRETATION OF PARTIES INDICATES.**

The practical interpretation given to their contracts by the parties to them while they are engaged in their performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and courts that adopt and enforce such a construction are not likely to commit serious error.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

This is an appeal from a decree to the effect that the complainant below, the appellee here, Kate R. Wright, is entitled to redeem an insurance policy for $5,000 from a mortgage to the appellant, the defendant below, the Manhattan Life Insurance Company, and to recover from the latter $4,239.43, the difference between the face of the policy and the amount of two notes made by the defendant. This decree is based upon this state of facts: On December 6, 1897, the plaintiff held a policy for $5,000 on the life of her husband, Thomas W. Wright, which had been issued by the defendant on November 27, 1889. The annual premium upon this policy was $250. Nine of these premiums had been paid, and there was a contract in the policy to the effect that, in case it should at any time lapse or be forfeited for the nonpayment of any premium under the circumstances of this case, the company would pay as many tenths of $5,000 as there had been annual premiums paid. As nine annual premiums had been paid, this was a contract for a paid policy of $4,500 if the last premium for $250 was not paid. In this state of the case Thomas W. Wright borrowed $350 of the defendant, and for the purpose of securing its repayment he gave to the company a promissory note payable to its order, signed by himself and by the complainant, his wife, the beneficiary in the policy, whereby they promised to pay to the company $350 and interest on November 27, 1898, and assigned their insurance policy to it as collateral security for the payment of this loan. They delivered this note and the policy to the company and received the $350, less the interest upon it for one year, which was thus paid in advance. On November 27, 1898, the last premium of $250 owing upon this policy became due. Wright did not have the money to pay it, and he applied to the company for a loan of $250 to enable him to do so. The defendant granted his application, loaned him the $250 for the purpose of enabling him to pay the premium, and at the same time loaned him $21.50 to enable him to pay the interest in advance for another year on the note for $350. Wright and the complainant gave to the company their promissory note for $271.50 for this loan, by which they promised to pay it on May 27, 1899, "two hundred seventy-one and $50/100$ dollars being premium due this day on policy No. 66263 with interest," and agreed that "if this note is not paid when due the said policy is void and the Manhattan Life Insurance Company is hereby expressly released from any liability, claim or demand upon or by reason of the said policy or by reason of the law of any state with reference to the surrender for cash or paid up insurance, except that this policy may then (within two months) be duly surrendered to said company for such sum as may be the custom of the company at that time to pay for the cash purchase of similar policies, less the amount of this note with interest." Upon the receipt of this note the company gave to Wright a receipt for $271.50 premium, on the back of which were these words and figures:

"Note given on account of premium............................ $——.
"Cash premium ................................................ $250.
"Interest in advance ......................................... 21.50
                                                              ————
                                                              $271.50

"Not valid unless countersigned by cashier at Home Office.

"H. D. Farley, Cashier."

On May 22, 1899, Wright requested the appellant to renew the note. On May 25, 1899, the company declined to do so, but offered to accept $100 in cash and a new note for $171.50. On June 2, 1899, Wright declined this offer, but wrote that he did not want to hazard his policy, and that in 60 days he would either pay the note in full or pay $100. On June 7, 1899, the company offered to accept $50 in cash and two notes, one for $100 due July 27, 1899, and the other for $121.50 due September 27, 1899. On June 19, 1899, Wright wrote to the company that he would send the $50 and the notes on July 1, 1899. On June 28, 1899, the appellant wrote to him that as it had heard nothing from him it presumed he did not care to revive and continue his policy, which had lapsed on May 27, 1899. The company retained the policy, and took no action to foreclose the mortgage upon it. Neither Wright nor the appellee ever surrendered or released it to the defendant. Neither of the two notes was paid, and on February 25, 1900, Wright died. The beneficiary, Kate R. Wright, presented the proper proofs of death, and exhibited a bill in equity to which a demurrer was interposed and overruled and an answer made. The case was then tried upon the merits, and the foregoing facts were disclosed. Thereupon the company contended, among other things, that the complainant was entitled to no relief (1) because the circuit court sitting in equity had no jurisdiction of the suit for the reason that the complainant had an adequate remedy at law; (2) because the policy of insurance and the rights of the complainant thereunder had been lost under the stipulations in the note of November 27, 1898, to that effect, on account of the failure to pay that note when it fell due; and (3) because the policy and the rights of the insured and of the complainant had been abandoned by their silence and inactivity between June 19, 1899, and the death of Wright, on February 25, 1900. The court below was unable to sustain these contentions, and rendered a decree for the complainant for the face of the policy and interest, less the amount of the notes and interest.

O. B. Willcox (H. G. Lunt, F. E. Brooks, Artemas H. Holmes, E. L. Rapallo, and H. W. Kennedy, on the brief), for appellant.

Alfred W. Arrington (F. R. McAliney, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and HOOK, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Prior to December 6, 1897, the complainant, Kate R. Wright, was the beneficiary in a policy of insurance of $5,000 upon which nine annual premiums had been paid, whereby, by the terms of the contract, she was entitled to a paid-up policy for $4,500. She made her note whereby she promised to pay $350 to the defendant on November 27, 1898, and she, together with her husband, the insured, assigned her policy and her rights thereunder to the company as collateral security for the payment of this note. This assignment contained a condition that, if the principal sum and the interest specified in the note should be fully paid before any default, the assignment should become null and void. In November, 1899, default was made in the payment of the principal sum. The written assignment of the policy as collateral security for the payment of this note was a mortgage of it. Jones on Chattel Mortgages, §§ 4, 5; Wright v. Ross, 36 Cal. 414; Piper v. Hilliard, 52 N. H. 209.

After default in the payment of the amount due upon the note the complainant had no adequate remedy at law. The title to the policy and to the rights she once held thereunder had vested in the

defendant under the mortgage she had given to it. One of the purposes of the bill in this case was to redeem from this mortgage, which had never been foreclosed. Upon familiar principles a court of equity has ample jurisdiction to entertain a suit for this purpose, and after it had obtained jurisdiction for one purpose it had ample power to grant adequate relief to any of the parties to the suit. After the default in the payment of the debt secured by the mortgage, the complainant had no adequate remedy at law, and the objection that a court of equity had no jurisdiction of this suit cannot prevail, because one of the main purposes of the proceeding was to redeem from the defaulted mortgage to the defendant.

The rules of law by which the result in this case must be determined are neither recondite nor doubtful. They are that the time of payment of a premium for insurance is, in the nature of the contract, of the essence of the agreement. A stipulation in a policy of insurance, in a note for the premium, or in any other instrument evidencing the contract of insurance or a part of it, to the effect that the policy or the insurance shall become void if the premium is not paid on the agreed day, is conscionable, valid, and enforceable. Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204; Life Ins. Co. v. Pendleton, 112 U. S. 696, 707, 5 Sup. Ct. 314, 28 L. Ed. 866; Fowler v. Ins. Co., 116 N. Y. 385, 395, 22 N. E. 576, 5 L. R. A. 805; Klein v. Ins. Co., 104 U. S. 88, 26 L. Ed. 662; Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437, 11 N. E. 507; Manhattan Life Ins. Co. v. Myers (Ky.) 59 S. W. 30; Schmertz v. U. S. Life Ins. Co., 118 Fed. 250, 55 C. C. A. 104; Behling v. N. W. Nat. Life Ins. Co. (Wis.) 93 N. W. 800.

But time is not ordinarily of the essence of a contract to repay money borrowed, and an agreement to forfeit or to lose money or property much in excess of interest during the delay on account of a failure to pay a loan on the stipulated day is a contract for a penalty for a failure to pay money, and is void, because compensation is the basic rule for the measure of damages, and interest during the delay is, under the law, full compensation therefor. Pomeroy's Eq. Jur. (2d Ed.) §§ 449, 450.

The pleadings and the evidence establish the fact beyond all controversy that the note of December 6, 1897, evidenced a loan of $350, and that it constituted no part of the contract of insurance. The crucial question in this case, therefore, becomes: Was the transaction which resulted in the second note dated November 27, 1898, a loan of $271.50, or an extension of the time of payment of the premium of $250, which fell due on that day, and hence a modification or a part of the contract of insurance? If it was a loan, the agreement which the note contained—that, if it was not paid when due, the original contract of insurance under which the beneficiary was then entitled to a paid policy for $4,500 should be void, except that it might be surrendered within two months for such sum as it might be the custom of the company to pay for the cash purchase of similar policies at that time, less the amount of the note and interest—was a penalty for a failure to pay money on the agreed day and was ineffective. If, on the other hand, this transaction was an

extension of the time of payment of the premium, and the note evidenced a modification, and hence became a part of the contract of insurance, then the agreement for the forfeiture of a part of the value of the policy for a failure to pay the premium on the new pay day was valid and enforceable, because time is of the essence of contracts for the payment of premiums, and interest does not fair'y compensate for delay in their payment.

In support of the contention that the transaction was a modification of the contract of insurance and an extension of the time of payment of the premium, it may be cogently urged that as the condition of forfeiture in the note is void, if the obligation evidences a loan, and valid if it indicates an extension of the time of payment of the premium, the presumption must be that it evidences the latter, because courts will presume that parties made a valid, rather than an invalid, agreement. Much of the force of this presumption is, however, withdrawn by the fact that the parties inserted a similar provision for a forfeiture of a part of the value of the policy in the note of December 6, 1897, which evidences the loan of the $350, where this provision is unquestionably void.

Another strong indication that the transaction was an extension of the time of payment of the premium, rather than a loan, might be found in the recital in the note that the $271.50 is the "premium due this day on Policy No. 66263," were it not for the fact that the evidence conclusively demonstrates that this recital was not true, and that at least $21.50 of the amount of the note was money loaned to pay the interest in advance for one year on the loan of $350. On the other hand, the $350 was money loaned. It was not premium. Therefore the interest on it was not premium, and there is no escape from the conclusion that the $21.50 which paid this interest for a year, which the Wrights borrowed of the defendant and agreed to repay to it by their note of November 27, 1898, was money loaned, and the promise to repay it was no part of the contract of insurance. The note of November 27, 1898, therefore, evidenced a loan of at least $21.50. Did it also evidence an extension of the time of payment of the premium due on that day?

The general rule is that a promissory note given for a debt is evidence of the indebtedness, that it does not constitute payment of it, and that the debt continues to exist. Nevertheless, the creditor may agree to accept the note in payment of the debt, and then the debt is paid and a new debt is created. When this insurance company received the note for $271.50 from the Wrights, it issued to them the following letter and receipt:

"Office of the Manhattan Life Insurance Company,

"66 Broadway, New York.          11/25.

"Dear Sir: Your favor with enclosures in payment of premium on policy No. 66263 due 11/27, 1898, is received.          J. H. Griffin, Jr., Asst. Sec'y."

"The Manhattan Life Insurance Company.

"New York, Nov. 27, 1898.

"Received $271.50/100 premium due this day on policy No. 66263, on life of T. W. Wright.                                        Wm. C. Frazee, Secretary."

On the back of this receipt were these words and figures:

"Note given on acct. of premium.............................$——.
"Cash premium................................................$250.
"Interest in advance ........................................  21.50
                                                            ————
                                                            $271.50
"Not valid unless countersigned by cashier at Home Office.
                                        "H. D. Farley, Cashier."

If this note was given to extend the time of payment of the premium, and not for money loaned, and then applied to its payment, why did the cashier of the company refrain from entering the $250 in the blank on the back of the receipt for such a note, and insert it in the blank for a cash premium? The practical interpretation given to their contracts by the parties to them while they are engaged in their performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and courts that adopt and enforce such a construction are not likely to commit serious error. Fitzgerald v. First Nat. Bank, 114 Fed. 474, 478, 52 C. C. A. 276, 280; Schofield v. Bank, 97 Fed. 282, 38 C. C. A. 179; Publishing Co. v. Swift, 97 Fed. 290, 296, 38 C. C. A. 187, 193; Leavitt v. Investment Co., 54 Fed. 439, 4 C. C. A. 429; Topliff v. Topliff, 122 U. S. 121, 131, 7 Sup. Ct. 1057, 30 L. Ed. 1110; City of Chicago v. Sheldon, 9 Wall. 50, 54, 19 L. Ed. 594.

The letter and receipt are persuasive and cogent evidence that when the note was given both parties interpreted it to be, not a promise to pay the premium at a later date, but a promise to repay a loan of $271.50, the proceeds of which had paid the premium at the time it was due, together with the interest in advance upon the earlier note of $350. Moreover, while the insurance company in its pleading denies that this note was accepted in payment of the premium, its original answer to the averment in the bill that it was given for a loan was an admission in these words: "That the said Thomas W. Wright applied to the defendant company for a loan of two hundred and fifty ($250.00) dollars with which to pay said premium, and that said application was granted upon condition that the complainant and the said Thomas W. Wright execute and deliver to this defendant their joint note, in the form, and with the terms and conditions, desired by said company, for the sum of two hundred and seventy-one dollars and fifty cents ($271.50), with interest thereon at six (6) per cent. per annum, and that the difference between the amount of the said note and the said sum of two hundred and fifty dollars ($250.00) was termed advance interest, to be paid for said loan." In its amended answer it denied that the $21.50 was "a bonus termed advance interest to be paid for said loan, nor was the same advance interest upon said loan," and averred that it was interest on the prior loan of $350. In the light of these answers and of the writings at the time the note was delivered, the conclusion that the parties to this transaction construed it to be a loan, and not an extension of time for the payment of the premium, is neither baseless nor irrational. When the payment was given, the beneficiary had the right without the payment of the tenth premium which fell due on that day to a paid

policy for $4,500, and this right and the policy which evidenced it were mortgaged for only $350. A construction of the transaction of November 27, 1898, which would place this right and policy at the risk of entire or serious loss from the failure to pay $250 on a day certain, when the payment of that sum in no way conditioned the right to the policy for $4,500, is more unreasonable and contrary to the ordinary course of business than one which mortgages or pledges the right and the policy to secure the payment of a loan of $271.50, and leaves them subject to redemption after a default in payment at the time specified.

The court below found that this transaction was a loan, and not an extension of the time of payment of the premium. The legal presumption is that the finding and decree of a court of chancery are right, and they should not be disturbed or modified by an appellate court unless an obvious error has intervened in the application of the law, or some grave mistake has been made in the consideration of the facts. Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 943, 52 C. C. A. 559, 563; Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 659, 51 C. C. A. 369; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 716, 45 C. C. A. 544, 567; Mann v. Bank, 86 Fed. 51, 53, 29 C. C. A. 547, 549; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110; Plow Co. v. Carson, 72 Fed. 387, 388, 18 C. C. A. 606, 607; Trust Co. v. McClure, 78 Fed. 209, 210, 24 C. C. A. 64, 65; Exploration Co. v. Adams, 104 Fed. 404, 408, 45 C. C. A. 185, 188.

In view of the fact that it is more in accordance with the usual course of business and more rational for parties to make a loan to pay a premium of $250, and to mortgage or pledge the right to a paid policy of insurance for $4,500, which is not conditioned by the payment of the premium, thereby retaining the right to redeem after default, than it is for them to promise to pay the premium at a later day, and to put the right to the insurance at the risk of entire or serious loss if the promise is not fulfilled on the exact day fixed, in view of the fact that at least $21.50 of the $271.50 secured by the note in question was certainly money loaned, and in view of the fact that all parties to this transaction, and especially the insurance company, interpreted it to be a loan when the note was delivered, as is evidenced by the receipts of the defendant and by its answer to the bill, the finding and decree of the court below upon this issue is amply sustained by the evidence, and there is nothing in the record to lead to the conclusion that it has either mistaken the facts or erred in the application of the law. Indeed, the evidence leads our minds to the same conclusion which was reached by the learned judge who considered it in the circuit court.

Nor does the record seem to us to establish the defense that the complainant or Thomas W. Wright, her husband, ever abandoned their rights under the policy in hand. The test of abandonment is the existence or nonexistence of intent to abandon. Acts indicating

abandonment are not always sufficient to establish it, and are generally material only as they tend to prove the intent to abandon. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 31, 21 Sup. Ct. 7, 45 L. Ed. 60; Dawson v. Daniel, 7 Fed. Cas. pp. 215, 216, No. 3,669; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 186, 16 Sup. Ct. 1002, 41 L. Ed. 118; Moore v. Stevenson, 27 Conn. 13; Livermore v. White, 74 Me. 452, 43 Am. Rep. 600; Judson v. Malloy, 40 Cal. 299; Hickman v. Link, 116 Mo. 123, 22 S. W. 472. The presumption is that the owner of property or of rights to property intends to preserve them, because this is the usual purpose of such owners. The burden is on him who alleges abandonment to clearly establish the intent to abandon by evidence sufficient to overcome this natural presumption. The insurance company failed to bear this burden successfully. The record is barren of evidence that the complainant, the beneficiary in the policy, ever had any intention, or ever did any act evidencing an intention, to abandon her contract of insurance or her rights under it. And while her husband, Wright, failed to pay the notes, and was notified by the insurance company on June 28, 1899, about eight months before he died, that it presumed that he did not care to revive and continue his policy, which had lapsed, and he never took any farther action concerning the policy or the notes, nevertheless, inasmuch as the fact that the policy had not lapsed, but all the premiums upon it had been paid, and inasmuch as in one of his letters to the company dated June 2, 1899, he wrote, "Now, gentlemen, I don't want to hazard my policy," and inasmuch as the company never took any proceeding to foreclose its mortgage upon the contract of insurance and upon the rights of the insured or of the beneficiary thereunder, this evidence does not convince that Wright ever intended to abandon his policy or the rights in equity which he was entitled to enforce thereunder.

The conclusions which have now been reached, that the transaction of November 27, 1898, was a loan, and not a modification of the contract of insurance, and that the complainant and her husband never abandoned their rights under their original policy, render the other questions which have been exhaustively discussed by counsel for the respective parties in their briefs and arguments immaterial to the determination of this case, and compel an affirmance of the decree below.