## SMITH v. McCULLOUGH et al.

(Circuit Court of Appeals, Eighth Circuit. December 23, 1922.)

No. 5892.

1. **Mines and minerals ⚫81—Failure of lessee to commence development held not to debar him of right to sue subsequent lessee for possession where he pays stipulated rental.**

Failure of the lessee in a mineral, oil, and gas lease to commence development work within the time specified does not debar him of the right, after taking possession, to maintain a suit in equity against a subsequent lessee, where he complied with a further provision of the lease by paying a stipulated rental in lieu of commencement of the work.

2. **Mines and minerals ⚫58—Fairness of provisions of lease to be determined by evidence.**

Whether the rental to be paid by a mineral, oil, and gas lessee in lieu of commencement of development within a time specified is so small as to render the contract voidable as inequitable and unfair is a question to be determined after hearing under the facts and circumstances shown.

3. **Mines and minerals ⚫58—Provision of lease for payment of rental during time prospecting was deferred held not inequitable.**

Where there was no known mineral on or in the vicinity of the land covered by a mineral, oil, and gas lease, a provision requiring payment of an annual rental of 5 cents per acre during the time prospecting was deferred *held* not unfair or inequitable.

4. **Appeal and error ⚫931(1)—Findings and decrees of court of equity presumed correct.**

The legal presumption is that the findings and decrees of a court of chancery are right and they should not be disturbed or modified by an appellate court unless an obvious error has intervened in the application of the law or some grave mistake has been made in the consideration of the facts.

5. **Mines and minerals ⚫73—Lease held to give lessee present vested interest, though not in possession.**

Though a mineral, oil, and gas lease does not require lessee to immediately take possession or commence exploration, it gives him a present vested interest in the land, with the right to such possession as shall be necessary or reasonably convenient to enable him to prospect for mineral and the right to relief in equity against interference by trespassers or by those holding inferior rights or interests.

6. **Mines and minerals ⚫81—Trespasser held to acquire no equities as against owners of valid lease.**

That defendant entered upon and at large expense developed the oil production of land *held* to give him no equities as against complainants where he had knowledge of their prior lease, which was valid and gave them an exclusive right to such production.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by W. P. McCullough and others, against Wesley M. Smith. Decree for complainants, and defendant appeals. Affirmed.

See, also, 243 Fed. 823.

Arthur S. Thompson, of Miami, Okl., for appellant.

Paul A. Ewert, of Joplin, Mo. (A. C. Towne, of Miami, Okl., and James S. Davenport, of Vinita, Okl., on the brief), for appellees.

⚫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before SANBORN, Circuit Judge, and TRIEBER and MUNGER, District Judges.

SANBORN, Circuit Judge. The plaintiffs, appellees here, brought a suit in equity against the defendant Smith, here the appellant, and secured a decree against him to the effect that the mineral, oil, and gas lease of the 120 acres in controversy from Leander J. Fish, a Quapaw Indian, to Dallas Hopper, of April 29, 1912, which Hopper had assigned to the plaintiffs, was valid; that the mineral, oil, and gas leases from Leander J. Fish to the defendant of November 4, 1912, and January 6, 1913, were void as against the rights of the plaintiffs; and that the defendant be perpetually enjoined from interfering with the plaintiffs' possession and use of the premises. From this decree the defendant has appealed.

[1] The plaintiffs' lease required them to commence operations to prospect for and develop oil, gas, or other minerals within 90 days after its date, and defendant's counsel argue that this decree should be reversed because the plaintiff did not enter upon the land leased within the 90 days. But neither such an entry nor the commencement of operations within that time was indispensable to the maintenance of a suit and the recovery of the relief in equity against the defendant claiming under the subsequent leases which the plaintiffs obtained, for the plaintiffs had paid the dollar consideration for the lease and the rental fixed therein, 5 cents per acre per annum, in case such operations were deferred. Guffey v. Smith, 237 U. S. 101, 112, 119, 35 Sup. Ct. 526, 59 L. Ed. 856, and McCullough v. Smith, 243 Fed. 823, 825, 833, 834, 835, 156 C. C. A. 335, wherein the pertinent provisions of the plaintiffs' lease are set forth, and their legal effect was stated, discussed and adjudged by this court. It is true that our decision at that time was based upon the averments of the complaint that the lessee Hopper and the plaintiffs had immediately after the date of the lease entered upon, continued in possession of, and prospected, developed and drilled the land. But under the decision in Guffey v. Smith, supra, such possession and operation were not necessary to the maintenance of this suit, and the court below found in its decree that the plaintiffs were in possession of the land under their lease at the time of the commencement of this suit.

[2] The lessees' agreement to begin operations within 90 days after the date of the lease is a part of the paragraph of the lease which also provides that in case such operations are not commenced within that time the lessees agree to pay to the lessor 5 cents per acre yearly for each acre of the land described in the lease "in lieu of said work." It is contended that this provision for a postponement of the prospecting, drilling, and development of the mineral on this 120 acres for $6 per year renders the lease so unconscionable that a court of equity ought not to protect or enforce any rights or interests of the lessees thereunder. The arguments, the authorities, and the exhaustive brief in support of this position have received studious and deliberate consideration. But the Supreme Court has decided that similar clauses in like leases do not bar lessees from relief in equity from the interference

with their rights thereunder by subsequent lessees. Guffey v. Smith, 237 U. S. 111, 116, 35 Sup. Ct. 526, 59 L. Ed. 856, and this court held in 1917 that this provision in this lease did not appear to invalidate it (243 Fed. 834, cited Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213), and added that the question whether or not that clause rendered the lease unfair or inequitable must be determined upon the final hearing upon the issues between the parties. That final hearing has been had and the court below has found that the lease was not inequitable or unfair. There is no averment in the answer of the defendant that this clause or the lease that contained it was unjust or unconscionable, and counsel in his brief calls attention to no evidence to that effect. The issue whether or not the lease was unfair or inequitable must be determined in view of the circumstances at the time it was given. Guffey v. Smith, 237 U. S. 101, 116, 35 Sup. Ct. 526, 59 L. Ed. 856; Willard v. Tayloe, 8 Wall. 557, 570, 571, 19 L. Ed. 501; Marble Co. v. Ripley, 10 Wall. 339, 357, 19 L. Ed. 955; Franklin Tel. Co. v. Harrison, 145 U. S. 459, 473, 12 Sup. Ct. 900, 36 L. Ed. 776. Prima facie the clause and the lease were fair and just. The burden was upon the defendant to prove that they were unconscionable or inequitable.

[3] The original parties to the lease had the right to agree and deliberately agreed to the clause in question and to the other terms of the lease, and neither of them sought relief therefrom. The lease and that clause in it were in the customary form of such leases and clauses in the state of Oklahoma and differed from others only in the amount per acre specified for the yearly postponement of the work. This lease was made April 29, 1912. The defendant's leases were made November 4, 1912, and January 6, 1913, and each of them contains a clause whereby the lessee agreed to pay 10 cents per acre yearly in lieu of work in case he did not commence operations within the time therein stipulated therefor. When the plaintiffs' lease was made in April, 1912, no one had any knowledge of any oil, gas, or mineral in or under the land thereby leased. There had been no drilling for or development of such minerals, and there was no drilling for or development in the vicinity of these lands sufficient to make it probable that such minerals would be found until some time in the year 1914. It was not until May 8, 1915, that a discovery of a mine was made on a tract adjacent to the 120 acres here in dispute. None had then been discovered on this land. It is difficult to perceive anything in that state of facts that would indicate that in April, 1912, there was any probability that oil or other mineral would ever be found in the land leased, or that the right to prospect for and develop it had or would ever have any substantial value. The discovery of mineral therein was a mere possibility. The probability was that the effect of the lease would be the receipt by the lessor of $6 per year clear gain and the loss by the lessees of the $6 per year they paid, for this is the natural and usual result of such leases. Those under which no minerals are discovered are many times as numerous as those under which a valuable discovery is made. And the conclusion is that the defendant failed to prove that the clause under consideration or the lease which contains it was either unfair, unjust, or inequitable.

[4] Counsel object to the decree: (1) On the ground that the 5 cents per acre yearly was not paid but the court below found that it was paid and there was substantial evidence to sustain that finding; and (2) on the ground that the plaintiffs abandoned the lease, but the court below found that they did not abandon the lease and there was substantial evidence to sustain that finding. Nor is all the evidence in the record on these questions of fact, when taken together, convincing that any mistake was made by the court below in either of these conclusions. The legal presumption is that the findings and decrees of a court of chancery are right, and they should not be disturbed or modified by an appellate court unless an obvious error has intervened in the application of the law or some grave mistake has been made in the consideration of the facts. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 513, 9 Sup. Ct. 355, 32 L. Ed. 764; Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 943, 52 C. C. A. 559; Manhattan Life Ins. Co. v. Wright, 126 Fed. 82, 88, 61 C. C. A. 138.

[5] Counsel persuasively and exhaustively argue that because of the terms of the plaintiffs' lease the lessees were not required to enter into actual possession of the land until 89 days after its date, and because they did not enter into possession thereof immediately after its date their lease was not a lease in possession and was unauthorized and void under the decision of the Supreme Court denouncing overlapping leases in United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844. This position was taken and presented to this court in a very elaborate and exhaustive brief and found by it to be untenable when this case was here in 1917, and a reconsideration of it in this case has failed to convince that there was any error in that conclusion. This lease, upon its execution and delivery, granted to the lessee a present vested interest in the land described in it, the right to such possession of that land as should be necessarily or reasonably convenient to enable the lessee to prospect for and extract the minerals from the land and the right to relief in equity against the interference with that right or with the exercise thereof by trespassers or by those holding inferior rights or interests in the land. Aggers v. Shaffer, 256 Fed. 648, 649, 168 C. C. A. 42; Northwestern Oil & Gas Co. v. Branine (Okl. Sup.) 175 Pac. 533, 534, 3 A. L. R. 344; Rich v. Donaghey (Okl. Sup.) 177 Pac. 86, 88, 89, 3 A. L. R. 352. Counsel has not failed to make other objections to the validity of the plaintiffs' lease but they are answered in the opinions in the cases to which reference has already been made.

A reversal of the decree is demanded because plaintiffs pleaded in their complaint, and, as the defendant insists, failed to prove that the lessee Hopper immediately on the execution of the lease to him entered into possession of the land leased and that ever since that time he and the plaintiffs have remained in possession thereof, prospected and developed the premises and had sunk numerous tests, or drilled holes upon the land. It is insisted that these allegations and the absence of proof of these facts estopped the plaintiffs from any recovery because this pleading was false. But even if the plaintiffs failed to prove the allegations just recited, that fact constitutes no estoppel because the

existence of those facts was not indispensable under the terms of the plaintiffs' lease to their recovery, because there is no evidence that those averments deceived the defendant, and because there is no evidence that he was led by them to change his situation to his injury.

During the final hearing of this case after the plaintiffs had introduced their evidence and rested and while the defendant was presenting his testimony, the defendant, for the purpose of establishing an estoppel of the plaintiffs from maintaining this suit, moved to amend his answer and to plead and prove these facts: That this suit was commenced on July 1, 1916; that on September 29, 1916, the plaintiffs McCullough and Landrum commenced a suit in the district court of Ottawa county, Okl., against J. E. Pottorff, defendant Smith and others, to recover from them certain shares of royalties that they alleged that Pottorff and Smith by virtue of the leases of Fish to Smith had collected and which Pottorff and Smith had agreed in 1913 to pay to McCullough and Landrum for their advance of certain amounts of money to pay for drilling four holes on a 40-acre tract of land included in the leases of Fish to Smith, but not included in the lease to Hopper, upon which this suit is founded. The court below, upon the objection of the plaintiffs, refused to permit the amendment of the answer, and refused to admit in evidence the proposed proof. Counsel argue that the proof thus offered should have been received, because it disclosed a claim of McCullough and Landrum under the leases to Smith so inconsistent with the claim in this suit of the invalidity of those leases as to estop the plaintiffs from maintaining any proceeding to avoid them. But in the suit in the state court McCullough and Landrum claimed that they advanced their money to pay for drilling the four holes in a 40-acre tract not included in the lease to Hopper. They claimed that they made the contract with Pottorff and Smith, and advanced the money in 1913, and at that time they had no interest in the lease to Hopper. It was not until the spring of 1915 that they procured such an interest, and finally their claim against Pottorff and Smith in the state court was based on the alleged personal agreement of those gentlemen to pay them for the advances they made to pay for the drilling of the four holes, and it did not assert, challenge, or involve the validity or invalidity of any of the leases. There was no inconsistency in the collection or the attempt to collect that claim, and the maintenance of this suit to establish the invalidity of the Smith leases as against the prior lease of the 120 acres to Hopper, and the court below fell into no error when it denied the motion to admit and rejected the evidence of the suit in the state court.

[6] A forcible and persuasive argument is made to the effect that because the defendant drilled and developed the land in controversy at great expense and extracted lead and other minerals of great value from it, his equities are superior to those of the plaintiffs, but he did all this when the plaintiffs had an exclusive valid lease of, and right to secure the minerals, oil and gas in, the land described therein, duly recorded, and the defendant had full legal notice thereof. Parties without right or with inferior right to such property cannot acquire superior equities or rights to it to the rights and equities of recorded

owners by boldly taking it with great activity at great expense. The owner has the right to it, and law and equity alike guard and protect that right.

The decree below must be affirmed; and it is so ordered