# CONSAUL *v.* CUMMINGS.

CONTRACTS, CONSTRUCTION OF; PARTNERSHIP; FOREIGN ADMINISTRATION; AUDITOR; ACCOUNTING; PUBLIC POLICY; INTEREST.

1. In construing an ambiguous contract the practical interpretation of it by the parties themselves is entitled to great, if not controlling, influence.

2. In a suit in equity for a partnership accounting between the administrator of a deceased partner and the surviving partner for attorney fees due the partnership for prosecuting claims against the government collected by the surviving partner, evidence that the deceased partner during his lifetime did not actively participate in the work of prosecuting the claims will not support a defense that the partnership had become dissolved by his abandonment of his duties thereunder, where there is nothing in the partnership articles to show the nature of the services to be performed by each of the partners, and it does not appear that the deceased was ever called upon, or even expected, to perform any, and the surviving partner testifies that in fact it was no partnership, but merely an employment of him by the deceased to attend to his business in the court of claims.

3. *Quære,*—whether a contract made by a party after he has been judicially declared a lunatic is void, or voidable only.

4. Where, in a suit by the administrator of a deceased partner for a partnership accounting, the defense of the surviving partner is that he purchased the interest of his deceased partner in the partnership property, the burden is on the defendant to so show by clear and satisfactory proof.

5. In a suit here by a foreign administrator the jurisdiction of the court appointing him cannot be collaterally attacked upon the ground that his decedent was not a resident of the jurisdiction where the administration was granted. (Following *Richmond & D. R. Co.* v. *Gorman,* 7 App. D. C. 91.)

6. Findings of fact by the auditor of the lower court are to be taken as presumptively correct, and, unless some obvious error has intervened in the application of the law, or some serious and important mistake has been made in the consideration of the evidence, a decree ratifying a report by him should be permitted to stand.

7. In a partnership accounting between the administrator of a deceased partner and the surviving partner, involving the distribution of at-

torneys' fees for the prosecution of claims against the government, in which there were findings by the court of claims and subsequent appropriations by Congress, claims for credit by the surviving partner, who collected the fees, for expenses paid to attorneys to procure appropriations to pay the claims, are properly denied, such services not being the subject of legal contract. (Following *Owens* v. *Wilkinson*, 20 App. D. C. 51.)

8. And in such a case a claim by the surviving partner for credit for extra compensation for services rendered after his partner's death is also properly disallowed, where no unusual services were performed, and it appears that it was not contemplated by the partners that the deceased partner should assist in the prosecution of the claims.

9. Expenses, however, in such a case incurred by the surviving partner in the prosecution of claims disallowed by the court of claims, should be allowed him, where the partnership articles provide for the expenses incurred in the prosecution of allowed claims, but are silent as to the expenses incurred in disallowed claims; and interest should also be allowed him on advances made to his partner during the latter's lifetime.

No. 1361. Submitted May 5, 1904. Decided May 24, 1904.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit in equity by the administrator of a deceased partner against the surviving partner for a partnership accounting. *Reversed.*

The COURT in the opinion stated the case as follows:

This bill was filed September 16, 1899, by Horace S. Cummings, as administrator of the estate of George B. Edmonds, deceased, against Gilbert Moyers for an account and settlement of the affairs of a partnership alleged to have existed between the intestate and the defendant in the prosecution of certain claims against the United States.

Edmonds and Moyers had been separately engaged as attorneys and claim agents in the prosecution of such claims before what was called the Southern Claims Commission, during its existence, and afterwards before the Court of Claims under an act of Congress known as the "Bowman act."

On February 6, 1888, they entered into the following agreement:

Know all men by these presents, in duplicate, that the undersigned, attorneys of Washington, D. C., are special partners in the prosecution of the cases named in the schedule hereto attached, now pending before the United States court of claims and the Congress of the United States, the fee agreed to be paid by the client in each case being the percentum of whatever may be recovered, as is stated herein, and the agreement between the undersigned being that each shall have half of said fees and that each shall pay one half of the expense incident to the prosecution of same, which expense is not to exceed two and a half per cent of the amount that may be allowed upon said claim.

And it is hereby agreed and understood that the said Gilbert Moyers shall represent and be associated with me in the prosecution of said claims before the court of claims and the Congress of the United States as joint attorney of record.

It is hereby understood and agreed that the undersigned, Gilbert Moyers, is to advance the expenses incident to the prosecution of said claims.

Witness our hands this 6th day of February, 1888.

                    (Signed)    GILBERT MOYERS.
                    (Signed)    GEO. B. EDMONDS.

The bill alleges the death of George B. Edmonds while a resident of the State of Virginia, and the appointment of complainant as the administrator of his estate by the county court of Fairfax county in that State on August 22, 1899.

It alleges, also, that a schedule of the cases referred to in the foregoing contract was attached thereto; that many of them resulted in judgments for recovery; the payment of which was provided for by act of Congress approved March 3, 1899, and that defendant collected and retained the fees contracted for therein. An exhibit attached to the bill sets out a list of the adjudicated cases by name and number, with the date and amount of payment in each.   The sum total of fees collected by the defendant,

as recited in this exhibit, amounts to $26,380.25, of which the complainant claims one half under the terms of the contract aforesaid. A separate allegation adds three other cases to the list in which the fees have not been collected, but for which warrants or drafts were about to be issued and delivered to defendant.

The bill further charges the refusal of the defendant to render any account of his collections of fees, and expenses paid in connection with the prosecution of the cases; and to pay over the amounts due to the estate of Edmonds.

The prayers are, that defendant be restrained from receiving any drafts or collecting any drafts on account of judgments in which said Edmonds had an interest; that a receiver be appointed to take charge of all of the assets of the alleged copartnership; that defendant be required to pay to the receiver all money that may have been collected by him on partnership account; that an account be taken between the said partners, and for a decree for the amount found to be due the complainant as the representative of said Edmonds.

The defendant's answer, on September 20, 1899, admits the agreement as set out, but denies any interest of Edmonds in the cases named in the exhibit to the bill, save those of Tappan and Fitzhugh. It admits the collection of the fees stated in the exhibit, but charges that the said Edmonds, in consideration of money paid him in the year 1892, relinquished to defendant all interest therein, etc. It denies the possession by defendant of any money in which complainant has an interest, and alleges defendant's solvency, and the possession of a large estate, consisting of real and personal property, more than sufficient to meet the demands of the bill. On May 18, 1900, defendant filed a motion, supported by affidavit, for leave to amend his answer and correct certain mistakes of facts inadvertently made therein. This motion was granted, and on May 26, 1900, defendant filed a supplemental answer, alleging, first, that the cases referred to in the partnership agreement were never scheduled or set out in any list attached thereto, so far as defendant has knowledge; second, that it was intended that one

should be made out and attached to the agreement that had been executed in duplicate, but the same had not been done; third, that the admission of his answer that he had collected all the fees named in the exhibit to the bill was erroneous, and that the cases of Ubele, Russell, Baylor, Roberts, Shaw, and R. M. Johnston, set out therein, had not been prosecuted by the defendant, but by other attorneys, with whom defendant had no connection, and who had, on their own account, collected the fees therein. On June 5, 1900, the court struck out of this answer the allegations relating to the schedule because the same had not been embraced in the leave to amend.

On June 13, 1900, the court passed a decree to the effect that a special partnership existed between defendant and Edmonds by virtue of the agreement, and related to the prosecution of the cases described in a schedule attached thereto; that the complainant is entitled to an accounting, and to recover the balance found to be due; and that the cause be referred to the auditor to take said account. On June 20 an order was entered appointing receivers, and directing defendant to turn over to them all books and papers relating to the said partnership business, and to pay over to them the sum of $9,000. Defendant appealed from this last order, but the same was affirmed on December 6, 1900. See *Moyers* v. *Cummings,* 17 App. D. C. 269.

A long period of time was occupied in taking testimony before the auditor. The auditor's report was filed August 20, 1902. This report shows a careful examination of all the matters in controversy and is accompanied by schedules showing the several items of the account taken. Taking up the several cases of the exhibit in order, the auditor found that all of them except five (Ubele, Russell, Baylor, Roberts, and Shaw) were embraced in the partnership agreement. He reported the sum total of fees collected by Moyers in the remaining cases to be $23,828.57, and that Edmonds was entitled to one half of the same. Against this one half he charged the amount of $1,470, found to have been advanced to Edmonds, and reported the balance of $10,-601.04, as due to complainant as the representative of Edmonds.

Both parties filed exceptions to the report. Before these were heard, Moyers filed a cross bill (December 19, 1902), praying the recovery of the sum of $1,470, and all of the expenses incurred by defendant in the prosecution of all of the claims in which Edmonds had an interest. The exceptions were heard on February 5, 1903. The court sustained one of the defendant's exceptions, namely, to the allowance of the fee collected in the case of R. M. Johnston, administrator of Samuel Heard, and overruled all others that had been taken by either party. Deducting the fee in the Johnston case from the balance found by the auditor, the court confirmed the report in all other particulars, and entered a decree against defendant for the sum of $10,-074.79, with interest thereon at 6 per cent per annum from September 16, 1899, until paid. The cause was ordered retained, the right being reserved to the complainant to apply to the court for an order or orders for the payment of any other and further sums that may hereafter come into the hands of the defendant on account of other cases that are embraced in the partnership, but in which collections have not yet been made. Defendant Moyers, having died after the entry of this decree, his administrators, Charles F. Consaul and Ida M. Moyers, made themselves parties in proper form, and have prosecuted this appeal therefrom.

As bearing upon so much of the controversy as relates to the prosecution of the partnership business, the advances made to Edmonds, and his alleged transfer of his interest in the fees of such business, it is to be added that the evidence tended to show that Edmonds had been adjudged a lunatic by the supreme court of the District of Columbia on January 24, 1891. and Horace S. Cummings appointed his committee; that he was confined in the insane asylum for a time, but was permitted to go at large thereafter; that he went about in 1892, and during that year received advances from Moyers, who testified that he had no knowledge that he had been adjudged a lunatic; that his committee had never been discharged, and that he died in that condition, while residing in the State of Virginia, in October, 1896.

*Mr. C. C. Cole, Mr. R. Golden Donaldson,* and *Mr. R. S. Huidekoper* for the appellants.

*Mr. Charles Cowles Tucker* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first assignment of error relates to the interlocutory decree of June 13, 1900, which determined that a special partnership existed between Edmonds and Moyers, and directed the account to be taken. The contention is that, "if any special partnership was ever created between the parties by the contract exhibited with the bill, it was dissolved and ceased to exist by the abandonment thereof by the said Edmonds and by the complainant as his committee during the lifetime of said Edmonds, and nothing was done by or on behalf of said Edmonds under said contract to entitle him or his representative to an accounting."

The record furnishes no substantial foundation for this contention. The defense to the claim of Edmonds of an interest in the fees collected in the cases embraced in the agreement is that in the year 1892 Edmonds, in consideration of certain sums of money advanced and paid to him by the defendant, agreed to accept the same in full settlement of his interest, and to return his copy of the agreement with an indorsement thereon showing said settlement. No evidence was offered, avowedly, to maintain any defense, on the ground of Edmonds's abandonment of the partnership agreement, and his failure to perform any services in its execution.

It appears, incidentally, that Edmonds took little or no part, practically, in the actual prosecution of the cases; but it does not appear that he was ever called upon, or even expected, to do so. The agreement is ambiguous in respect of the particular nature of the services to be performed by each of the special partners, but rather seems to contemplate that the active prosecution of the cases should be conducted by Moyers. This was evidently the construction adopted and acted upon by Moyers. Referring to the agreement in his testimony, he said: "It was not a

partnership agreement. It was an employment of me to attend to certain business for him in the court of claims in regard to certain cases. You might style it a limited partnership. There was no general partnership." Again, one Hill, who had a desk in the office of Moyers, and who was called as a witness by the latter to prove the payment of $500 by him to Edmonds, said that he had read the "partnership agreement by which Colonel Moyers was to take charge of Mr. Edmonds's business. I know that Colonel Moyers had agreed to take charge of Mr. Edmonds's business and conduct it for him; I knew that in 1888, when I was in the office with Colonel Moyers." We have before mentioned the apparent acquiescence of Moyers in the inactivity of Edmonds, there being no evidence tending to show that he ever called upon him for any assistance. "In cases where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation of the parties themselves is entitled to great, if not controlling influence. The interest of each generally leads him to a construction ꞏmost favorable to himself, and when the difference has become serious and beyond amicable adjustment it can be settled only by the arbitrament of the law. But in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one." *Chicago* v. *Sheldon,* 9 Wall. 50, 54, 19 L. ed. 594, 596; *Topliff* v. *Topliff,* 122 U. S. 121, 131, 30 L. ed. 1110, 1114, 7 Sup. Ct. Rep. 1057.

2. The second assignment is that the court erred "in decreeing that there was no valid and binding purchase made by the said Moyers of the interest of the said Edmonds in said claims."

Without passing upon the question whether a binding contract could have been made with Edmonds for the assignment of his interest in the fees expected to be realized under the contract, on account of his pre-established lunacy, it is sufficient to say that we find no satisfactory proof that such an assignment or relinquishment was ever made. The relations established between the parties by the agreement imposed upon Moyers the

burden of making clear and satisfactory proof of the settlement, and the release by Edmonds of his interest in the fees to accrue thereunder.

The entries in Moyers's books show certain advances and "loans" to Edmonds, who was impecunious, of sums ranging from $10 to $100, between January 17 and July 23, 1892. These entries speak for themselves. The evidence of the payment of the final sum of $500 is meager, and, in so far as it relates to the settlement and release, of which this payment is claimed to have been the concluding act, falls short of the requisite standard of certainty.

3. The third assignment of error seeks to raise the question of the right of the complainant to bring this suit as the administrator of the estate of George B. Edmonds. The contention is that the Virginia court of probate had no jurisdiction to appoint an administrator of said estate, and consequently that its order was a nullity.

The allegation of the third paragraph of the bill that complainant had been appointed administrator by the Virginia court was expressly admitted in the answer; and objection to the validity of that appointment has been raised for the first time on this appeal. The objection is founded on certain evidence, brought out incidentally, tending to show that intestate had become a resident of the District of Columbia in 1872; but also that he had spent some time in a soldiers' home in Virginia after 1891, and had gone again to that State in February, 1896, by arrangement of his committee, where he remained until his death in October of the same year.

Without regard to the irregular manner in which this contention has arisen, we are of the opinion that the issuing of letters of administration must be accepted as valid. *Richmond & D. R. Co.* v. *Gorman,* 7 App. D. C. 91, 106.

4. The fourth assignment of error is founded on the action of the court in overruling the exception taken to so much of the auditor's report as included the claim cases of Cate, Davidson, Bagnell, Hunt, Ladd, Harding, Williams, Hornbaker, Merrill,

Ehs, Burgwyn, and Fauber in the fee agreement between the parties.

A great deal of testimony has been directed to the question of the exclusion from the partnership account of these cases, the combined fees in which amount to $12,788.17.

In the first place it was proved beyond question that, about 1892, Edmonds delivered to Cummings (his committee) his own copy of the agreement to which was then firmly attached a list of the cases purporting to be the schedule referred to therein. This list includes the cases above named. After Edmonds's death, original papers relating to the large majority, if not to all, of the cases enumerated in the schedule were found in trunks or boxes belonging to him. The papers were inclosed in separate "jackets" marked with the name of the case. These papers, as well as private papers relating to the cases in question, produced by Moyers, together with his dockets and books of entries, were produced before the auditor, before whom also much of the oral testimony was taken. The evidence relating to these matters, as presented in the printed record, is confusing, to say the least of it. The great mass of these papers have been omitted from the record. In some instances they are described in the record, and with regard to a great portion of them a stipulation was made to supply omissions from the transcript. This stipulation is in such condensed form that its bearing is general, and not particular. The auditor's report indicates a careful examination into the particulars of each case in the reference. As regards the Hunt case, in which the fee collected was $9,722.50, making it the one of the greatest consequence, the auditor reports: "The evidence shows that Edmonds was employed as attorney in this claim as early as May or June, 1886, and had a fee agreement, which is produced here, dated June 1, 1886. The defendant's first appearance in the case is in October, 1888." This and similar facts in regard to other cases tend to establish the genuineness of the schedule attached to Edmonds's copy of the contract in which it is included. Moyers produced no schedule and did not account for his omission to have one made and attached,—an omission rather strange considering the

nature of the contract and the fact that Moyers had cases of his
own of the same nature in which Edmonds was not interested.
The omission becomes stranger still when we find in the record
that Edmonds presented a contract to Moyers for signature,
which Moyers objected to, and that Moyers then prepared the
contract that was executed, and caused it to be typewritten by
one of his clerks.    The unsigned contract evidently contemplat-
ed a list of cases, but refers to no schedule; but the substituted
contract expressly refers to an attached schedule.  Edmonds
having died before the controversy arose, there was no further
evidence obtainable on his behalf.    We cannot find from the
opposing testimony that this schedule was deliberately prepared
by Edmonds without foundation and for the purpose of defraud-
ing Moyers.    Recurring to the Hunt case above mentioned,
Moyers was unable to produce a contract with the party, and
produced no written evidence showing an employment of him-
self individually.    His own testimony, relating particularly to
the transactions with Edmonds, is, of course, not competent.
The whole matter in controversy relating to this partnership was
referred to the auditor, upon such evidence as had been given
and upon such other as might be taken before him, with direc-
tion to report his conclusions.    Having done this, his findings
of fact were reviewed by the justice presiding in the equity
court, concurred in, save as regards a single item which is not
now in controversy, and carried into the decree.    "Clearly,
then," in the language of Chief Justice Fuller, "they are to be
taken as presumptively correct, and unless some obvious error
has intervened in the application of the law, or some serious or
important mistake has been made in the consideration of the evi-
dence, the decree should be permitted to stand."    *Crawford* v.
*Neal,* 144 U. S. 585, 596, 36 L. ed. 552, 557, 12 Sup. Ct. Rep.
759.    See also *Furrer* v. *Ferris,* 145 U. S. 132, 134, 36 L. ed.
649, 651, 12 Sup. Ct. Rep. 821; *Morgan* v. *Daniels,* 153 U. S.
120, 124, 38 L. ed. 657, 658, 14 Sup. Ct. Rep. 772.

It may be admitted that there is some doubt respecting the in-
clusion of some of these claims in the partnership agreement,
but that doubt is not sufficient to warrant the rejection of the

auditor's findings, that have been examined and approved by the court to which they were reported.    Moreover, the doubt has been largely occasioned by the failure of Moyers to obtain the schedule of the cases, and the careless manner in which he seems to have kept his office records and entries.

5. The fifth, sixth, and seventh assignments of error, relating to credits claimed by Moyers for expenses incurred in the prosecution of the cases, and for extra services, fees, and charges, may be considered under one head, and in a different order from that of their presentation, for the sake of convenience.

(1) The items claimed on account of fees paid to attorneys and agents in the matter of procuring legislation by Congress looking to the reference and payment of the claims were properly denied.    Such services are not the subject of lawful contract.    *Owens* v. *Wilkinson,* 20 App. D. C. 51.

(2) Nor was the defendant entitled to any credits for extra services as claimed.    If any such were rendered in the matter of urging and procuring legislation they cannot be made a legal charge, as we have just seen.    It does not appear that legal services were rendered beyond those usually contemplated in conducting litigation of the kind.    The only foundation for the claim would seem to be in the fact that Moyers performed all the services in conducting the litigation to an end because of Edmonds's failure to assist.    That contention has been disposed of under the first assignment of error.

(3) The exception taken to the refusal to allow the expenses incurred in the prosecution of the cases presents another question of some difficulty.    Expenses were allowed by the auditor in a great many of the cases included in the schedule showing successful termination and the collection of the judgments.    The amounts of these allowances we do not understand to be questioned by the appellants.    The controversy applies to a great number of other cases, some pending, but the majority long since determined adversely to the claimants.    Those in pending and unsettled cases may be regarded as not now in question; for the case, as we have seen, has been ordered to be retained to the end

that orders may be made in such of these as may be hereafter collected.

The question, then, may be confined to the expenses claimed as having been incurred, and paid by Moyers, in the unsuccessful cases, and which consist of fees and costs of depositions, fees to local attorneys, traveling expenses, and so forth. Regarding these the auditor reported as follows: "I think a fair interpretation of this agreement is that each claim should be settled between the partners promptly upon the receipt by Moyers of the attorney's fee, and such settlement should include the expenses advanced by Moyers under the terms and limitations of the partnership agreement. Holding these views, I have declined to make any allowance in this account for the expense said to have been incurred in the prosecution of cases other than those set forth in the account herewith." In so far as this conclusion embraces the expenses in the cases in which collection of fees has been made, or even in those where the judgments have not yet been collected, it is of no material importance, but we cannot concur with the court in its adoption as regards the claims that have been denied recognition. It is to be presumed that the parties had some hope of success in each of these cases, —enough, at least, to warrant their prosecution; and they knew that the prosecution must entail some expense. Moyers agreed to advance these expenses on joint account; but one half was to be a charge against Edmonds. In the absence of express language to that effect it is unreasonable to suppose that Moyers intended to take the entire risk of success in each case, looking to Edmonds for one half of the expense incurred in the successful cases alone, and we do not regard the contract as requiring such a construction. In our view of the meaning of this contract, we are of the opinion that Moyers is justly entitled to credit in the accounting for one half of the expenses incurred by him in the prosecution of each of these unsuccessful cases. It is true that the evidence relating to the several items of these expenses is uncertain,—an uncertainty largely due to the manner in which Moyers kept his accounts. Nevertheless, we are of opinion that from an examination of those accounts or the state-

ment made by him of the same, in connection with such information as may be derived from the records of the court of claims, and the general average of expenses in other cases of the same nature that have been ascertained and allowed, a fair and reasonable estimate may be made. This estimate should not include any part of the general office expenses of Moyers, as these are embraced in his undertaking to conduct the prosecution of the cases; but in other respects there is no reason why it should not be liberally made, in view of the fact that the large balance of fees for distribution is the result of Moyers' exertions and expenditures of money during the long period in which he was engaged in the prosecution of the cases comprehended in the agreement with Edmonds, who rendered no substantial assistance, and was, moreover, supported in part by money advanced to him by Moyers beyond the requirements of that agreement.

6. As the case must be remanded for another reference to the auditor to ascertain and allow the credits to which Moyers is entitled for expenses in the prosecution of the unsuccessful claims, it is proper to direct attention to another item of credit for which no allowance has been made. By the terms of the decree ordering Moyers to pay the balance found to be due on the accounting, interest has been awarded against him for the time when he should have accounted to the plaintiff therefor, namely, September 16, 1899. The appellants offer no objection to this award of interest, but complain that a similar award was not made respecting the sum of $1,470 found to have been advanced by Moyers to Edmonds in 1892. We are of the opinion that this claim is a just one, and that in restating the account interest on that amount should be allowed in favor of Moyers from, say, the 1st day of January, 1893, until September 16, 1899.

Save in respect of the particular errors pointed out herein above the decree is correct; but for those errors it will be reversed and the cause remanded, with direction to refer the account to the auditor that he may ascertain the credits to which Moyers is entitled on account of the expenses incurred in the unsuccessful cases, and the interest upon the $1,470 ad-

vanced by him, at the rate of 6 per cent per annum from January 1, 1893, to September 16, 1899; and with further direction to take such proceedings upon the auditor's report as shall not be inconsistent with this opinion.

Each party will be taxed with one half of the costs incurred on this appeal.    It is so ordered.                    *Reversed.*

On June 3, 1904, the appellants, by *Mr. Cole, Mr. Donaldson,* and *Mr. Huidekoper,* filed a motion to modify and enlarge the decree and mandate of this court, so as to (1) authorize the auditor to ascertain and report the expenses paid by Gilbert Moyers in the prosecution of the pending claims mentioned in these proceedings, as well as those disallowed or unsuccessful; and (2) also to authorize the auditor, upon the ground of alleged newly discovered evidence set forth in an affidavit attached to the motion, to make a further report upon the question whether certain claims mentioned in the motion were included in the partnership agreement, and that, if he should find that some or all of them were not so included, to restate the account.

This motion was denied by the court on June 8, 1904, Mr. Chief Justice ALVEY indorsing the following upon the motion:

"This motion is denied.    Questions relating to claims that may have been referred to the auditor under the provision of the decree appealed from retaining the cause for their consideration and determination, are not before us on this appeal, and hence no order can be made governing their disposition or allowance.    For this reason, there is nothing in the decree of this court to preclude a reference or re-reference of such claims to the auditor, if the justice presiding in the equity court shall deem it necessary or proper so to do."

On June 7, 1904, the appellee, by *Mr. Tucker,* filed a motion for a reargument of the cause, or, in event that such motion should be denied, that the decree of this court should be modified or changed (1) so as to make it one of affirmance instead of reversal, with a statement in the opinion that in any pending or subsequent reference to the auditor the estate of Gilbert Moyers should be allowed the credits this court had held he was

D. C.]                          Syllabus.

entitled to; (2) so as to define what were the "general office expenses" which this court in its opinion stated Moyers's estate should not be given credit for in the new accounting ordered; (3) so as not to allow that estate interest on the entire $1,470, as required in the opinion; and (4) so as to require the appellants to pay the entire costs of the appeal, instead of one half.

This motion was denied by the court on June 8, 1904.